**COMP**
Robert A. Nersesian
Bar No.: 2762
**NERSESIAN & SANKIEWICZ**
528 South Eighth
Las Vegas, Nevada 89101
(702) 385-5454; (702) 385-7667 (FAX)
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Laurie Tsao, a/k/a Laurie Chang ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Desert Palace, Inc., T. Crumrine, and Does ) <br> I-XX, jointly and severally ) <br> ) <br> Defendants. ) <br> _____) | Case No: 2:08-cv-00713-RCJ-GWF |

**MOTION FOR PARTIAL SUMMARY JUDGMENT DETERMINING THAT DEFENDANT, DESERT PALACE, INC., HAD NO AUTHORITY TO DEMAND THE PLAINTIFF LEAVE THE PREMISES OR ARREST HER ON FAILING TO DO SO, AND DETERMINING THAT A PRIOR WARNING NO TO TRESPASS WAS INNEFECTIV, AND THEREFORE, COMMITTED FALSE IMPRISONMENT**

Now comes plaintiff, and herewith moves for partial summary judgment pursuant to NRCP 56 determining defendant had no authority to demand the plaintiff leave the premises or eject plaintiff from its premises at the onset, and for liability for false imprisonment. This motion is based on the pleadings and papers on file to date, the attachments hereto, the following memorandum of points and authorities, and any oral argument the court deems appropriate.

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. CONCISE STATEMENT OF FACTS

1. Plaintiff is an advantage gambler skilled in a method of playing blackjack known as "card counting."

2. On September 23, 2007, Defendant, Desert Palace (Caesars), cited Nev. Rev. Stat. 207.200 and informed plaintiff that she was being barred from the property due to her skill at blackjack, and was not welcome to return.

3. Thereafter, plaintiff received express invitations to return to Caesars. *See* Exhibit 1.[1]

4. On March 19, 2008, plaintiff had returned to Caesars and was playing blackjack.

5. Plaintiff was approached by Caesars personnel on that date.

6. Caesars personnel then conducted a citizen's arrest of the plaintiff for returning to the property, purportedly in violation of Nev. Rev. Stat. 207.200, and plaintiff was issued the Misdemeanor Citation/Complaint attached as Exhibit 2.

7. In accord with the citizen's arrest of the plaintiff, plaintiff was taken to the security office at Caesars over her protest, and subsequently transported to the Clark County Detention Center.

8. The State subsequently abandoned the prosecution of the plaintiff.

*See* Affidavit of Plaintiff, Exhibit 3.

## II. ISSUES PRESENTED FOR DETERMINATION

**ISSUE 1:** Was there any legal effect to the trespass warning given to plaintiff on September 23, 2007? (Plaintiff contends that there was not as a matter of law).

---

[1] The attached Exhibit 2 has been written over the original writing to highlight the contents of the exhibit. Had a later generation copy been attached, it would not have been legible. Plaintiff's counsel has a copy of an earlier generation of Exhibit 1 that is legible, and the attached exhibit truly represents the contents of this earlier generation.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

**ISSUE 2:** If the court is in agreement that there was no legal effect to the trespass warning given plaintiff on September 23, 2007, is plaintiff entitled to partial summary judgment of liability against Caesars for false arrest/imprisonment?

## III. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

When there is no genuine issue as to any material fact, a claimant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. The United States Supreme Court has explained:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Further, the Supreme Court explained the judge's role in evaluating the evidence to determine whether there is a failure of proof:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . .[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . .or is not significantly probative, . . .summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

It should be noted that Caesars will likely posit that further discovery is necessary. This is a red-herring in the case at bar. The central facts upon which this motion is based fall within the complete knowledge of Caesars should they desire to contest any of the facts presented. Caesars first ejected plaintiff because she was a card counter. The second ejection occurred, by

-3-

the citation signed by Caesars' employee, because plaintiff returned to the premises after having been previously ejected.[2] In short, material facts contradicting the foregoing must by definition be presently known to defendant, and there is no basis to delay ruling of the issue presented.

Lastly, Fed. R. Civ. P. 56(a) authorizes summary judgment on a "part of a claim." As the Notes of the Advisory Committee on the 1946 amendments to Fed. R. Civ. P. 56 notes:

> The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.

The issue presented falls squarely within this purpose and intent behind the rule. Simply, if Caesars had no right to eject the plaintiff as indicated in Exhibit 2, then the plaintiff's return referenced in was entirely privileged and legal. Thus, resolution of this issue will eliminate matters before trial, and the motion is appropriately presented.

### B. PLAINTIFF HAD A RIGHT TO BE ON THE PREMISES OF CAESARS IN THE FORM OF A CONDITIONAL LICENSE REVOCABLE ONLY UPON CERTAIN CONDITIONS, THE CONDITIONS DID NOT EXIST, AND CAESARS HAD NO ABILITY TO REVOKE THAT LICENSE AND EJECT PLAINTIFF

### 1. GAMING LICENSEES CANNOT AVAIL THEMSELVES OF THE STATUTORY ABILITY TO EJECT ANY PERSON FOR ANY REASON FOUND AT NEV. REV. STAT. 207.200

The law in Nevada requires that Caesars allow plaintiff to gamble, even if she is a winner or particularly skilled at the games it offers. Nev. Rev. Stat. 463.0129.1 provides in relevant part:

> (e) To ensure that gaming is conducted honestly, competitively and free of criminal and corruptive elements, **all gaming establishments**

---

[2] Not at issue at this point is the fact that the plaintiff was re-invited after the prior ejection. Regardless of the decision under the arguments made herein, this fact would either be determinative or present issues regardless of the determination of the present motion.

-4-

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

**in this state must remain open to the general public and the access of the general public to gaming activities must not be restricted in any manner except** as provided by the Legislature.[3]

(Emphasis added). Through judicial notice and the exhibits attached, it is obvious that the defendant is a gaming establishment. By the clear and unequivocal terms of this section of Nev. Rev. Stat. 463.0129, Caesars was required to provide plaintiff, as a member of the general public, access to the gaming activities at its casino, and was bound by law to not restrict that access absent a legitimate basis to do so. To put plaintiff out of the premises obviously restricted plaintiff's access to "gaming activities," and the trespass of plaintiff runs afoul of the Caesars's charge that such access must not be "restricted in any manner."

Admittedly there is a second part of Nev. Rev. Stat. 463.0129.1 providing,

> 3. This section does not: (a) Abrogate or abridge any **common-law** right of a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the establishment for any reason;

(Emphasis added). A careful analysis of this section, nonetheless, indicates the impropriety of Caesars's actions in trespassing plaintiff and that Caesars's reliance on a right to trespass anyone for any reason.

Caesars turns to Nev. Rev. Stat. 207.200 in Exhibit 1 for the authority to put plaintiff out of its property and for the later arrest/detention of the plaintiff. The law forecloses application of Nev. Rev. Stat. 207.200 for the ejection of a gambler. Pointedly, the express language of Nev. Rev. Stat. 463.0129.1(e) establishes the impropriety of any reliance upon Nev. Rev. Stat. 207.200 by a gaming establishment. Nev. Rev. Stat. 207.200 provides a **statutory** basis for

---

[3] It appears that this section was added by NEVADA ASSEMBLY BILL NO. 770, 1991, ch. 371.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

excluding persons from gaming establishments. Obviously a statute guarantying access subject only to the express "common law" right to exclude does not reach a "statutory" right to exclude.

As a statute specific to gaming licensees, Nev. Rev. Stat. 463.0129.1(e) governs and supersedes the general statute found at Nev. Rev. Stat.. 207.200. *See United States v. Estate of Romani*, 523 U.S. 517, 532 118 S. Ct. 1478, 1487 (1998), *City Plan Dev. v. Office of the Labor Comm'r*, 121 Nev. 419, 117 P.3d 182, n. 13 (2005). Thus, because the specific governs the general, a statutory trespass warning under Nev. Rev. Stat. 207.200 that conflicts with the provisions of broad and unfettered access specified in Nev. Rev. Stat. 463.0129.1(e) is ineffective.

Secondly, in respect to the viability of Nev. Rev. Stat. 207.200 following the passage of Nev. Rev. Stat. 463.0129, under Nevada law the latter statute has repealed the trespass statute as concerns access to gaming, saving only "common law" right in the casino relative to trespass. By expressly mentioning that the language does not abrogate or abridge "common law" authority to exclude, Nev. Rev. Stat. 463.0129.3 necessarily abrogates and abridges "statutory" authority. Moreover, under Nevada substantive law a later statute that "is basically inconsistent with" an earlier statute impliedly repeals the earlier statute with respect to the inconsistency. *Southern Nev. Tel. Co. v. Christoffersen*, 77 Nev. 322, 325, 363 P.2d 96 (1961). Nev. Rev. Stat. 463.0129 (1) (e), enacted in 1955, provides, "[A]ll gaming establishments in this state must remain open to the general public . . .". The legislature enacted Nev. Rev. Stat. 207.200 in 1911. To the extent that the statutory authority in Nev. Rev. Stat. 207.200 could be used to exclude a member of the general public from the premises of a gaming licensee through a trespass warning, the guarantee of access in Nev. Rev. Stat. 463.0129.1(e) obviously repeals Nev. Rev. Stat. 207.200.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

This is further supported by the language of Nev. Rev. Stat. 463.0129.3. Nevada applies the rule of statutory construction *expressio unius est exclusio alterious* (expression of the one excludes the alternatives).[4] Nev. Rev. Stat. 463.0129.3 expressly states that it does not "abrogate or abridge any **common-law**" right to eject. The legislature could have provided that it does not 'abrogate or abridge any legal right' or 'abrogate or abridge any statutory or common law right.' Instead, it expressly limited the right to eject to any right to eject at common law. Thus, logically and legally, under Nev. Rev. Stat. 463.0129.3, the requirements of access under Nev. Rev. Stat. 463.0129.1(e) do necessarily "abrogate and abridge" any other right to exclude that is not a "common law" right, and any **statutory** right of a casino to eject patrons from its casino no longer survives. In short, any trespass warning under Nev. Rev. Stat. 207.200 is ineffective under the requirements of unfettered access in Nev. Rev. Stat. 463.0129.1(e), and there can be no legitimate application of Nev. Rev. Stat. 207.200 to a legally playing patron. Any such right, by the express statement in Nev. Rev. Stat. 463.0129.1(e), must be found in the common law.

## 2. UNDER THE COMMON LAW CAESARS COULD NOT EJECT PLAINTIFF FOR ANY REASON, AND A LEGITIMATE REASON NOT PRESENT IN THIS CASE IS A PREREQUISITE TO A LAWFUL EJECTION

Because Nev. Rev. Stat. 463.0129.3 expressly provides that the legal duty to provide access to the general public is limited to "any common-law right . . . to exclude . . .", the scope of the common law defines the right of the defendant to exclude the plaintiff. Under the common

---

[4] ""*Expressio unius est exclusio alterius*." This is a well-recognized rule of statutory construction and one based upon the very soundest of reasoning; for it is fair to assume that, when the legislature enumerates certain instances in which an act or thing may be done, or when certain privileges may be enjoyed, it names all that it contemplates; otherwise what is the necessity of specifying any? The rule invoked is so thoroughly recognized, not only by the courts generally, but by our own court, that it would be puerile to dwell upon the question presented, further than to quote from the decisions of our own court." *Ex parte Arascada*, 44 Nev. 30, 35, 189 P. 619 (1920)

-7-                                528 South Eighth Street
                                                    Las Vegas, Nevada 89101
                                                       (702) 385-5454

law Caesars had no right to exclude or eject plaintiff, and therefore, Caesars's demands on the ejection of September 23, 2007 violated Nev. Rev. Stat. 463.0129.1(e).[5]

Under the common law the defendant cannot eject plaintiff. The authority under the common law on the issue of the right of a business open to the public, especially an amusement business, to exclude patrons or prospective patrons provides a rule contrary to the rule the legislature stated. Businesses open to the public have no right under the common law to exclude a patron for any reason.

The common law as applied in Nevada is the common law as it existed in 1864. *See Cheung v. Eighth Judicial Dist. Court of Nev.*, 124 P.3d 550, 553 (Nev. 2005). The common law precedent closest in time to Nevada becoming a state and adopting Nev. Rev. Stat. 1.030 (recognizing the common law) appears to be found in *Commonwealth v. Power*, 48 Mass. 596, 1844 Mass. LEXIS 48 (1844). In *Power*, the plaintiff opened its depot for the customers of its railroad.[6] A local innkeeper made a practice of going upon the railroad's depot property to solicit customers, and had been informed that the railroad prohibited this activity. Upon appearance of the innkeeper at the depot she was forcibly removed. The state brought assault and battery charges against the railroad's employees that removed the innkeeper. The innkeeper

---

[5] While the legislature included within its statement concerning the "common law" the purported "right . . . to eject any person from the premises of the establishment for any reason," the "common law" is the "common law," and legislators have no ability to define its scope. *See* RICHARD A. POSNER, THE PROBLEMS OF JURISPRUDENCE 247 (1990) ([Common law is] "law created primarily through judges by their decisions rather than by the framers of statutes or constitutions . . ."), THE VITAL COMMON LAW: ITS ROLE IN A STATUTORY AGE 18 U. Ark. Little Rock L.J. 555, 558 (1996). Indeed, it is self evident that the legislature can no more create "common law" than a judge can legislate. Here the express statutory terms purportedly recognizing a common law ability to eject for any reason do not create any law. The legislature cannot make the common law. Still, the statute references the "common law," which is quite different from how the Nevada legislature apparently perceived it.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

maintained that she was a traveler that entered the depot for travel to Richmond, a purpose contemplated for the public's access *vis a vis* the business. The court noted that the record was devoid of any indication that the innkeeper informed the railroad's agents that she was partaking in the business offered rather than soliciting boarders as she had in the past. Following conviction the employee appealed. In remanding for a new trial the court reasoned that if the railroad's employees believed that the innkeeper was undertaking activities other than the business offered by the depot, then there would be no crime. I.e., the employee had a right to eject a person on the premises that was not undertaking the business offered, and correlatively, under the common law, the employee had no basis to eject a person legitimately on the premises and partaking in the business the proprietor offered to the general public.

Stating the limits of the common law right of a business open to the public to exclude persons, the court ruled:

> That the opening of depots and platforms for the sale of tickets, for the assembling of persons going to take passage, or landing from the cars, amounts in law to **a license to all persons, *prima facie*, to enter the depot, and that such entry is not a trespass**; but that it is a license conditional, subject to reasonable and useful regulations; **and, on non-compliance with such regulations, the license is revocable**, and may be revoked either as to an individual, or as to a class of individuals, by actual or constructive notice to that effect . . . .

*Id.*, at 603. (Emphasis added).[7] In other words, under the common law a patron holds a conditional license to be upon the premises of a business open to the public. Further, so long as

---

[6] *Power* was decided in the early days of railroads, and does not appear to be discussing railroads as common carriers with special duties. Rather, it appears to be discussing the general common law status of a legal patron to a general business open to the public.

[7] *And see Donnell v. State*, 48 Miss. 661, 680-681, 1873 Miss. LEXIS 89, \*\*30 (1873): "**Among those customs which we call the common law**, that have come down to us from the remote past, are rules which have a special application to those who sustain a quasi public relation to the community. The wayfarer and the traveler had a right to demand food and lodging from the inn-keeper; . . . So, too, **all who applied for admission to the public . . . amusements, were**

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

the patron is legitimately partaking of the business offered, not being disruptive or disorderly, and so long as the patron continues about the business offered, the license is irrevocable.

More modern authority supports this conclusion as well. In fact, there is a case on point with the current circumstance and discussing the common law as it applies to advantage gamblers (specifically card counters such as the plaintiff. In *Uston v. Resorts International Hotel, Inc.*, 445 A.2d 370 (N.J. 1982), a casino had excluded infamous card counter Ken Uston. Mr. Uston brought an action to determine his right to be in the casino and play blackjack. The casino defended on the same basis that the Caesars apparently ejected the plaintiff, to wit: Casinos have a right to exclude anyone for any or no reason. The question addressed by the court was, therefore, the precise question raised here. That is: Is there "a common law right of [an amusement place owner] to exclude anyone at all for any reason." *Id.*, at 373. The New Jersey Supreme Court, with an expansive discussion of historic common law precedent, concluded that there simply was no such common law right, and in fact, under long established common law precedent a patron holds a common law right of access which is not to be arbitrarily revoked.

The *Uston* court then went on to apply the common law to the contentions of the casino and Mr. Uston. The record, unmodified by the decision, included the lower court's finding that "it is only Uston's skill as a player of blackjack that gives rise to Resorts' desire to bar him from participating as a player at the blackjack games." *Uston v. Resorts International Hotel, Inc.*, 431 A.2d 173, 175 (N.J. App. 1981). It was thusly noted, as also recognized in Nevada, that card counting was a legitimate strategy in playing the game of blackjack. With Mr. Uston

---

**entitled to admission**, and in each instance, for a refusal, an action on the case lay, unless sufficient reason were shown." (Emphasis added).

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

playing a legitimate strategy in the game offered, and not otherwise disrupting the operations of the casino, the New Jersey Supreme Court concluded that casinos, under the common law, have duties to patrons as follows:

> [T]hey have a duty not to act in an arbitrary or discriminatory manner toward persons who come on their premises. T[his] duty applies . . . to all property owners who open their premises to the public. Property owners have no legitimate interest in unreasonably excluding particular members of the public when they open their premises for public use.
> [C]ommon law principles enable the casino to bar from its entire facility, for instance, the disorderly, the intoxicated, and the repetitive petty offender.
> Respondent Uston does not threaten the security of any casino occupant. Nor has he disrupted the functioning of any casino operations. Absent a valid contrary rule by the [Gaming] Commission, Uston possesses the usual right of reasonable access to Resorts International's blackjack tables.

*Uston*, 445 A.2d at 375. The court then granted Uston the requested relief, to wit: An injunction barring the defendant from excluding Mr. Uston from its premises or preventing him from playing blackjack.[8]

Applying this common law to the plaintiff as a patron, Caesars held no common law right to eject the plaintiff. Pointedly, Caesars obviously opens its business to the public, and is even required by statute to do so. Upon entry on the property, plaintiff holds a license to be there. This license is revocable, but only upon non-compliance by plaintiff with "reasonable and useful" regulations. Plaintiff's actions are identical to those of Mr. Uston, and none of them are in conflict with Caesars's responsibilities as a gaming licensee. In full accord with *Uston*, Caesars could not eject plaintiff under the common law.

---

[8] Note: The *Uston* court found this inability of a casino to eject a legally playing customer even without a statute guaranteeing access such as Nev. Rev. Stat. 463.0129(e).

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

It is expected that Caesars will respond that the plaintiff misstates the common law and it had a right to eject plaintiff for any or no reason. While many states have modified the common law to allow for ejection for any or no reason, Nevada has not done so. More importantly, when the reason for the modification of the common law in some states is examined, it is inadvisable to grant such a common law right in Nevada.

So, what is the historic right under the "common law" of the owner of a public place of amusement to exclude or eject a member of the public? There is no published Nevada Supreme Court case on the right of an amusement business open to the public to exclude a member of the public absent a violation of the reasonable rules and regulations of the business, but there is authority. The common law authority on the issue is found in the authority cited by plaintiff, and under application of NRS 1.030, that common law authority is Nevada authority. In other words, the "common law" is part of the law of Nevada and therefore, Nevada authority. It is to be determined as of the date Nevada entered into the Union. *See Cheung v. Eighth Judicial Dist. Court of Nev.*, 124 P.3d 550, 553 (Nev. 2005). That is, by statutory dictate under Nev. Rev. Stat. 1.030 and by adoption of NRS 463.0129, the law of Nevada on the issue is the historic law of England and other common law jurisdictions on the issue as of 1864. Therefore, the right of a business open to the public to evict a legitimate patron under the common law as of 1864 defines that right for the purposes of this motion and application of NRS 463.0129.

Returning to *Uston v. Resorts International Hotel, Inc.*, 445 A.2d 370 (N.J. 1982), the case provides a compilation of historic common law authority that the eviction of a customer from an amusement open to the public is limited to customers that are acting in such a way as to render such eviction reasonable, and an eviction without a reasonable legitimate reason is tortious. *Uston* also cites *Bell v. Maryland*, 378 U.S. 226, 299 (U.S. 1964), noting the following in a concurring opinion:

-12-

> "Among those customs **which we call the common law**, that have come down to us from the remote past, are rules which have a special application to those who sustain a quasi public relation to the community. The wayfarer and the traveler had a right to demand food and lodging from the inn-keeper. . . . So, too, **all who applied for admission to the public . . . amusements, were entitled to admission**, and in each instance, for a refusal, an action on the case lay, unless sufficient reason were shown.

(Emphasis added). *Bell v. Maryland*, 378 U.S. 226, 299 (U.S. 1964). Thus, from the highest authority, under the common law, absent a reasonable reason, as of 1864 a member of the public could not be ejected from a public amusement (i.e., a park, carnival, a theatre, or casino), and any such ejection was actually actionable as a tort against the proprietor. *And see Donnell v. State*, 48 Miss. 661, 680-681, 1873 Miss. LEXIS 89, \*\*30 (1873), *Grannan v. Westchester Racing Ass'n*, 16 A.D. 8, 20 (N.Y. App. Div. 1897) (Recognizing common law rule, but reversed at 47 N.E. 896 (N.Y.1897) with the court finding that the exclusion of the person was based on reasonable grounds), *Commonwealth v. Power*, 48 Mass. 596, 1844 Mass. LEXIS 48 (1844), *People v. King*, 18 N.E. 245, 247 (N.Y. 1888). This is the common law applied in Nevada, places of public amusement cannot exclude patrons for any or no reason, and this common law provides the rule of decision for this matter.

The court in *Uston* admittedly noted that many jurisdictions modified this common law rule following the adoption of the Civil War Amendments, and went on to explain why this modification of the common law occurred. Not all jurisdictions modified the common law, however. *Accord State v. Tauvar*, 461 A.2d 1065 (Me. 1983) (Absent conduct providing a reasonable and legitimate basis for exclusion, persons have a right to be in places open to the public by private entities). The modification in some jurisdictions engendered by the Civil War Amendments was to change the common law rule from restricting ejection to only those instances where there was a legitimate and reasonable basis, and granting the authority of a

-13-                    528 South Eighth Street
                                           Las Vegas, Nevada 89101
                                           (702) 385-5454

proprietor to eject for any or no reason. Pointedly, nonetheless, the common law in Nevada, unless modified by subsequent judicial decision, is the common law as of 1864, and would not include the common law as modified in other jurisdictions following this date. No Nevada authority followed the other states in changing the common law in this respect, and therefore, the common law in Nevada persists in the sense that a casino cannot eject a patron without a legitimate and reasonable basis.

Nor would it be wise or appropriate to declare, for the first time under Nevada law, that the common law is modified to allow ejection for any reason whether reasonable or not. In *Uston*, the New Jersey Supreme Court actually retracted the State's modification of the common law and reestablished the historic common law requiring a legitimate and reasonable basis for excluding a patron from a business establishment open to the public. It was noted that up until the Civil War Amendments to the Constitution the common law fully recognized the impropriety of ejecting a **white** person from a business establishment without a legitimate reason. *Uston* at 171, *and see People v. King*, 18 N.E. 245, 247 (N.Y. 1888) (Recognizing the right of white people at common law to access to places of public amusement, and finding constitutional a law that extended that same right to "citizens of African descent").

The effect of the Civil War Amendments was to extend the common law to African-Americans as well as whites. Following these enactments, many states began to modify their common law to allow a proprietor offering services to the public to exclude any person for any or no reason. This 'blanket' allowance granted proprietors the ability to exclude non-whites without violating the law. *Uston* pointed out that this original rationale for departure exhibited "less than dignified reasons," and had none of the rigmarole. The states that modified the common law allowing broader rights to exclude or eject did so in order to perpetuate the rights of business owners to refuse service to minorities. The New Jersey Supreme Court in *Uston*, refused to accept as part of their common law a modification that was enacted for the purpose of

-14-

advancing segregation and discrimination against Afro-Americans, and the court reestablished the common law in New Jersey as requiring places of public amusement to be accessible to all absent a legitimate and reasonable basis for exclusion.

Simply, as alluded in *Uston*, the common law had been modified in many states as a 'Jim Crow' law. The law that does not apply here because it is statutory, Nev. Rev. Stat. 207.200, itself has the badges of 'Jim Crow' legislation having been enacted for the purpose of eradicating the common law rule requiring that businesses remain open to the public, and allowing proprietors to exclude racial minorities from their premises. Pointedly, it was enacted in 1911, dead smack in the middle of the nationwide proliferation of 'Jim Crow' legislation. *See Bell v. Maryland*, 378 U.S. 226, 308 (U.S. 1964), n. 26 and n. 27. This, incidentally, also provides a strong indication that the common law in Nevada is quite different than Nev. Rev. Stat. 207.200 because, if the common law were in accord with Nev. Rev. Stat. 207.200, then there would have been no reason to enact the statute. Nevertheless, under NRS 463.0129(e), NRS 207.200 provides no authority to gaming licensees, and the authority of gaming licensees to trespass an individual is limited to the common law.

Although Nev. Rev. Stat. 207.200 arguably presents a statutory retreat from the "common law," and allows the ejection of a patron for any or no reason, the Nevada judiciary has never retreated from the "common law," and the statutory retreat cannot provide a basis for ejecting a patron. Nevada has no judicial authority that ever removed the common law from its history of mandating access of the public to places open to the public. Indeed, Nevada appears to be one of the few states with no Supreme Court authority that, at some point, allowed a denial of public

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

or private access on the basis of race.[9] Like New Jersey, Nevada and this court should avoid accepting, as the common law, a modified rule that came into effect primarily for the purpose of allowing institutionalized discrimination on the basis of race, and the State and the Federal Courts sitting in the State should be cemented as a bastion of equality under the law where the judicial history remains untainted by acceptance of rules constructed to forward societal discrimination.[10] In 1864 the law in Nevada was that public businesses cannot eject patrons without a legitimate, reasonable basis. Unless this court holds that since 1864, Nevada's common law changed through the addition of a 'Jim Crow' overlay, then today the law in Nevada remains that public businesses, especially businesses of public amusement, cannot eject patrons without a legitimate, reasonable basis.

*Uston* then evaluated the question that directly addresses the issue before this court. Is there a reasonable reason for a casino, as a public amusement, to eject an advantage gambler because (s)he is an advantage gambler. The court answered with an emphatic 'no.' Pointedly, as noted, there was no disruption by the method, the method was legal, and by playing the game the casino offered to the public, no reasonable or legitimate basis existed allowing the casino to eject the "card counting" patron. I.e., it would be a violation of the law for the casino to do so. *Uston* at 445 A.2d 375. Applying Nevada law should achieve the same result.. Pointedly, pursuant to NRS 463.0129, Caesars is not allowed to choose its customers but must accept the public, plaintiff was a customer playing by the rules, and Caesars was not allowed to exclude plaintiff.

/ / /

---

[9] The case of *Application of Kellar*, 81 Nev. 240 (1965), is close where the petitioner noted that the State Bar of Nevada had never admitted a "negro" to the practice of law, but the decision does not ratify this basis.

[10] For those states that did modify their common law in order to allow proprietors to exclude anyone, the passage of the Civil Rights Act of 1964 modified this rule as to race, etc. *See Katzenbach v. McClung*, 379 U.S. 294 (U.S. 1964)

-16-

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

### D. CAESARS IS LIABLE FOR THE FALSE IMPRISONMENT OF THE PLAINTIFF

On March 19, 2008, plaintiff was detained and arrested by Caesars for returning after having been given a trespass warning purportedly issued under Nev. Rev. Stat. 207.200. Affidavit, Exhibit 3, ¶ 6, and Exhibit 2. As noted above, having been superseded by Nev. Rev. Stat. 463.0129(e), gaming licensees are foreclosed from relying upon or applying the statute found at Nev. Rev. Stat. 207.200, and are relegated solely to the common law in finding a basis to exclude or eject a member of the public.

False imprisonment is the unlicensed and impermissive detention of the plaintiff against her will. It is established at such point as plaintiff's freedom of movement is curtailed either physically or by unequivocal directives.[11]

False imprisonment is explained more fully in Nevada's criminal statutes. In this respect, the definition of the **crime** of false imprisonment is instructive. Per Nev.Rev.Stat. 200.460 "False imprisonment is an unlawful violation of the personal liberty of another, and consists in . . . detention without sufficient legal authority. A person convicted of false imprisonment . . . is guilty of a gross misdemeanor." The turning factor in the statute and under tort law is legal authority (detention + no legal authority=false imprisonment). In this respect, the analysis below demonstrates that plaintiff not only suffered a tortious false imprisonment, but was also a victim of criminal false imprisonment by defendant.

---

[11] Prosser addresses false imprisonment as follows:
> The action for the tort of false imprisonment, sometimes called false arrest, is another lineal descendant of the old action of trespass. It protects the personal interest in freedom from restraint of movement. . . . [T]he plaintiff may be imprisoned when restrained in the open street, or in a traveling automobile, or when confined to an entire city, or compelled to go along with the defendant.

Prosser on Torts, Ch 1, § 11.

-17-

Concerning the critical factor of 'legal authority' Nevada statutes are express and clear as to when a gaming licensee holds legal authority to detain or seize a person. A gaming licensee can detain for suspicion of cheating, when there is probable cause to believe that the detainee is an at large felon, or a citizen's arrest for a crime committed. Nev.Rev.Stat. 465.101, 171.1235, and 171.126. That is all the legal authority to detain that Caesars held. Because Caesars must allow access save for a common law right to exclude or eject, the prior trespass warning given pursuant to Nev. Rev. Stat. 207.200 was a legal nullity. With access mandated and the prior trespass being a nullity, the detention of plaintiff for a violation of Nev. Rev. Stat. 207.200 cannot be a legitimate citizen's arrest. Caesars' detention of the plaintiff was without legal authority, false imprisonment occurred, and plaintiff is entitled to partial summary judgment.

## III. REQUEST FOR RELIEF

For the foregoing reasons plaintiff requests partial summary judgment determining Caesars liable for the false imprisonment of the plaintiff.

Dated this 2d day of July, 2008.

NERSESIAN & SANKIEWICZ

/S/
Robert A. Nersesian, Esq.
Nevada Bar No. 2762
528 South 8TH Street, Suite A
Las Vegas, Nevada 89101
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

On this 2d day of July, 2008, the undersigned did serve a copy of the foregoing motion for partial summary judgment upon Philip S. Gerson, attorney through the CMECF system

-18-

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

1. maintained by this court.      /S/
Robert A. Nersesian

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454