DAVID M. JONES, ESQ.
Nevada Bar No. 004647
THOMAS D. DILLARD, JR., ESQ.
Nevada Bar No. 006270
OLSON, CANNON, GORMLEY
& DESRUISSEAUX
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Telephone: (702) 384-4012
Facsimile: (702) 383-0701
E-mail: DJones@ROCGD.com
Attorney for Defendant
DESERT PALACE, INC.

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| LAURIE TSAO, a/k/a LAURIE CHANG, ) | CASE NO.: 2:08-cv-00713-RCJ-GWF |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DESERT PALACE, INC. T. CRUMRINE, ) | |
| and DOES I-XX, jointly and severally, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT DESERT PALACE, INC.'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW Defendant, DESERT PALACE, INC., hereinafter referred to as

("DESERT PALACE") by and through its counsel of record, DAVID M. JONES, ESQ. and

THOMAS D. DILLARD, JR., ESQ. of the law firm of OLSON, CANNON, GORMLEY &

DESRUISSEAUX, and hereby moves for summary judgment pursuant to Federal Rule of Civil

Procedure 56 as there exists no genuine issue of material fact and judgment is appropriate as a

matter of law.

This Motion is made based upon all of the pleadings and papers on file herein, together

/ / /

/ / /

/ / /

OLSON, CANNON, GORMLEY & DESRUISSEAUX
Law Offices of
a Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

with the following facts, points and authorities and any argument that may be introduced at the time this matter is considered.

DATED this 18 day of February, 2009.

OLSON, CANNON,
GORMLEY & DESRUISSEAUX

By: _____
DAVID M. JONES, ESQ.
Nevada Bar No. 004647
THOMAS D. DILLARD, JR., ESQ.
Nevada Bar # 006270
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Attorneys for Defendant
DESERT PALACE, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

### A.    Nature of the Case

This case arises from a March 19, 2008 incident Plaintiff had with Caesar's Palace security initially and then with an officer from the Las Vegas Metropolitan Police Department ("LVMPD") that resulted in her arrest and transport to the Clark County Detention Center ("CCDC"). Plaintiff sued both Desert Palace as the operator and manager of Caesar's Palace ("Caesar's") and LVMPD itself for various state law claims as well as for civil rights violations pursuant to 42 U.S.C. § 1983. (Complaint, attached as Exhibit "A"). Defendant DESERT PALACE has done business as Caesar's Palace in Las Vegas, Nevada for many years and Defendant will refer to itself as Caesar's or Caesar's Palace throughout this instant motion.

Plaintiff is a self-professed advantage gambler or card counter and her game of choice is Blackjack. Plaintiff acknowledges in her Complaint that she had been previously trespassed from Caesar's Palace but returned to play on March 19, 2008 because she "held valuable rights in player's club card earnings." (Complaint ¶ 5). Plaintiff alleges she volunteered to leave after she was confronted by security but that they instead took her into custody for trespass and escorted her to the security office. Id. at ¶¶ 6-7. Plaintiff alleges security then "summoned the police" and an officer arrived on the scene, conducted an investigation including questioning Plaintiff and then ultimately arrested her for making false statements to a police officer. Id. at ¶¶ 9-18, 21. Plaintiff generally contends there was no basis for Caesar's security to detain and handcuff her and no probable cause for her arrest.

Based on these allegations, Plaintiff has brought the following claims for relief: (1) Assault against Caesar's for being "put in reasonable fear and apprehension of a harmful or offensive touching", id. at ¶ 29 ; (2) Battery against all Defendants for being seized and handcuffed, id. at ¶¶ 34-35; (3) False Imprisonment against all Defendants for being detained "for hours and restrained from leaving" and for her ultimate incarceration in CCDC, id. at ¶ 42; (4) Intentional Infliction of Emotional Distress against all Defendants; (5) Premises Liability against Caesar's for not keeping "their premises in a condition of reasonable safety for patrons"

based on a failure to train theory, id. at ¶ 53; (6) Defamation against all Defendants for being "handcuffed . . . in full view of other members of the public," id. at ¶ 56; (7) Abuse of Process against Caesar's for "falsely instit[ing] criminal process," id. at ¶ 65; and (8) Violations of 42 U.S.C. § 1983 against all Defendants. Plaintiff contends in her eighth claim of relief (and her only federal claim) that there is a widespread pattern of conspiratorial conduct between gaming institutions generally and LVMPD as a department to violate Fourth Amendment rights of "legal professional gamblers, a class to which the plaintiff belongs." Id. at pp. 10-13.

Defendant Desert Palace asserts that Plaintiff was trespassed from Harrah's properties on five (5) separate occasions prior to the incident in question and returned in violation of the trespass orders. The security at the time of the incident had probable cause to believe she was in violation of a trespass order and detained her. They held her until the police arrived in part because she failed to produce identification to allow them to issue her a citation in lieu of arrest. The police officer arrived and took her into custody for a separate charge based on his belief that she presented false information to a police officer regarding her identity while he was lawfully pursuing a criminal investigation.

**B.**     **Pertinent Procedural History**

Early in this case, Plaintiff sought judgment as a matter of law on her false imprisonment claim contending that Caesar's did not have legal authority to trespass Plaintiff for any reason unrelated to the impermissible criteria of discrimination protected by Title VII of the 1964 Civil Rights Act. The District Court on October 16, 2008 denied the motion and in so doing rejected Plaintiff's legal arguments altogether on the issue of a gaming establishment's right of ejecting a patron from the premises. (Order, attached as Exhibit "B"). In so doing, the Court stated the following:

> Contrary to Plaintiff's argument, Defendant had the right to remove Plaintiff from its gaming establishments under N.R.S. 207.200. . . .
>
> . . .
>
> Nevada Revised Statute 463.0129 states that "this section does not abrogate or abridge any common-law rights of a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the establishment for any reason." Id. The common law right of a gaming establishment to exclude or eject unwanted customers has long been established [citations omitted].

OLSON, CANNON, GORMLEY & DESRUISSEAUX
Law Offices of
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-0012   Telecopier (702) 383-0701

Places of amusement or resort, owned by private parties, have never been subject
to the higher requirements of an innkeeper. . . .

(Exhibit "B" pg. 4). The Court further noted that the Nevada Gaming Control Act does not contain any provision (unlike New Jersey) limiting the common law right to exclude for any reason and thus distinguished the lone case Plaintiff cited to support her argument. Id. at pg. 5-6. This order is the law of the case.

## II.

## STATEMENT OF FACTS

Plaintiff holds herself out as a professional gambler and has been playing Blackjack for several years. She notably was a member of the Massachuset's Institute of Technology team that was the subject of the book "Bringing Down the House" and the recent movie 21. (Plaintiff Deposition pp. 11, 134-35, attached as Exhibit "C"). She has received compensation for teaching classes on playing Blackjack. Id. at 12-13. Plaintiff has been able to gamble as a card counter in Las Vegas and other locales largely by subterfuge. Plaintiff has obtained in excess of twenty (20) player's club cards from various gaming establishments all under different names. (Plaintiff Depo. pp. 20-26,30-31, 35-39, 42-44, 47-48, 50-70, 77-80, 104, 117, 127, 141-44, 197) (Plaintiff's Responses to Defendant T. Crumrine's Interrogatories, attached as Exhibit "D").

Plaintiff has over the years used various drivers licenses and passport identification and obtained cards under various combinations of her name including Chinese spellings, American spellings, maiden names, married names, etc. (Plaintiff Depo. pp. 25, 28, 30, 31, 43, 50, 55, 61, 63-65, 67, 141-43). Specifically, Plaintiff has obtained gambling cards under the names of Laurie Tsao, Laurie Cao, Laura Cao, Laurie Cao Chang, Laurie Cao Chen, Laurie Tsao Chen, Laurie Chen, Hong Cao, Cao Hong and Cao Chang. (Exhibit "D"). Plaintiff has also obtained friends and relatives cards and used them to gamble. She has followed this practice to play under the following aliases: Sheyu Deng (student of her class), Xiang Cao (brother), Ai Hua Yang (mother), Hui Feng Yang (friend), Margaret Wo (real estate agent) Pai Fen Yeh (friend), Yong Peng (sister-in-law) and Cao Min (cousin). Id. at 35-38, 43-44, 53, 58-59, 62, 66, 68-69. Plaintiff also testified she picked up a card lying on a table and used it to gamble under the name of Monica Lieu. Id. at 56-57. This was the false name Plaintiff was using when gambling on the

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

day that is the subject of this litigation. Plaintiff furthermore has presented false passport identification to obtain gamblers cards. Id. at 63-65, 198. She was successful in doing so and used the names of Jing Wang and Christina Ng to try to gamble without being detected. Id. There are also security reports linking Plaintiff to the aliases of Feng Xiaolin and Laurie Cao Hong Tsao.[1]

Plaintiff has a protracted history of being trespassed or ejected from Harrah's properties under some of her aforementioned aliases. The record of Plaintiff being so trespassed is as follows:

1. Plaintiff was trespassed on September 19, 2005 under the false name of Cao Hong. (Caesars Palace Security Report of 09/19/05, attached as Exhibit "E")(Plaintiff Depo. pp. 31-32, 83-85).

2. Plaintiff was trespassed under the false name of Laurie Cao on December 24, 2005. (Surveillance Incident Report of 12/24/05, attached as Exhibit "F")(Plaintiff Depo. pp. 85-86).

3. Plaintiff was trespassed under the name of Laurie Tsao on February 12, 2006. (Caesars Palace Security Report of 02/12/06, attached as Exhibit "G")(Plaintiff Depo. pp. 71-76, 87).

4. Plaintiff was trespassed under the name of Laurie Tsao on January 23, 2007. (Harrah's Entertainment Inc. Rio Security Department Report of 01/23/07, attached as Exhibit "H")(Plaintiff Depo. pp. 77-79).

5. Plaintiff was trespassed on September 23, 2007 under the false name Shuyu Deng and advised she was trespassed from all Harrah's properties. (Caesars Palace Security Report of 09/23/07, attached as Exhibit "I")(Plaintiff Depo. pp. 79-82).

On March 19, 2008, Plaintiff (wearing a large hat pulled down to attempt to cover her face) returned to Caesar's Palace with a friend and fellow card counter Nelson Fu. (Plaintiff Depo. pp. 148-49). Plaintiff arrived on the Casino floor at approximately 2:00 a.m. after playing for a time at the Monte Carlo. Id. at 88. Plaintiff's acquaintance was asked to show identification at the Monte Carlo so they decided to leave and try a different location. Id. at 89-90. Plaintiff and Mr. Fu drove to Caesar's and began playing Blackjack. Plaintiff was playing with a player's card she found on a table with the name of Monica Lieu. Id. at 157. After Plaintiff finished playing a hand wagering approximately $10,000.00, she was approached by Clint Makeley of Caesar's security when she was standing in the pit area. Id. at 93-94, 96

---

[1] See Plaintiff's Depo. pp. 44-45 & Exhibit "J".

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012     Telecopier (702) 383-0701

(Caesar's Palace Security Report, attached as Exhibit "J").

Mr. Makeley asked Plaintiff to present some identification. Plaintiff stated she did not have identification on her person. Id. at 95. Plaintiff claims then she asked to leave but was told that she was trespassed before and was not permitted to leave. Id. Plaintiff was then handcuffed and escorted to a security room. Id. at 97. Plaintiff does not claim that the cuffs were applied in an incorrect fashion nor does she claim she suffered pain due to tightness. Id. at 105-06. She sat down on the bench in the security room. Mr. Makeley indicated to her because she could not show identification and they could not ascertain her true identity that he would be calling the police. (Clint Makeley Depo. pp. 42-43, 54, 60, attached as Exhibit "K")(Officer Travis Crumrine Depo. pp. 98-99, attached as Exhibit "L"). Plaintiff was told again that she was trespassed from all of Harrah's properties. (Makeley Depo. pg. 62).

After a time, a LVMPD police officer, Travis Crumrine, arrived and conducted an investigation including questioning Plaintiff concerning her true identity. Plaintiff Depo. pp. 165. Officer Crumrine during his investigation believed Plaintiff was not being truthful with him concerning her vehicle and where it was. He then told Plaintiff that it was very important that she answer his next question truthfully. The question was, what is your name? (Officer Crumrine Depo. pp. 34-35, 53-56, 91)(Declaration of Arrest, attached as Exhibit "M"). Plaintiff stated her name was Laurie Chang. (Plaintiff Depo. at pp. 115-117, 166)(Exhibit "M"). Plaintiff later acknowledged she did not want to reveal her identity as Laurie Tsao because Plaintiff under this name "had trouble at the Rio." (Plaintiff Depo. at pg. 160).

Officer Crumrine subsequently learned that her name was Tsao based on the information he got from DMV as to the name on her drivers license and the name listed as the registered owner of Plaintiff's vehicle. (Crumrine Depo. pp. 29, 36). Based on his investigation, Officer Crumrine believed Plaintiff provided him false or misleading information concerning her identity and eventually placed her under arrest for providing false information to a police officer. The specific charge was obstructing a police officer or "any person who willfully or unlawfully hinders or obstructs or delays a police officer in the discourse of his duties or during an investigation." Id. at 34. The officer then transported Plaintiff to the Clark County Detention

OLSON, CANNON, GORMLEY & DESRUISSEAUX
Law Offices of
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

Center when she was released shortly thereafter. (Plaintiff Depo. at pp. 20, 122).

Plaintiff testified that as far as she was aware the charges were never filed or dropped before she had to make an appearance in court. (Plaintiff Depo. at pp. 123-24); see also (Crumrine Depo. pg. 100)(stating he as the charging police officer did not receive a subpoena to come to court). There is further no evidence to suggest that the charge initiated by Caesar's Palace for trespass generated the filing of an actual criminal complaint against Plaintiff.

Plaintiff admits that she was trespassed on six occasions from Harrah's properties prior to March 19, 2008. (Plaintiff Depo. at pg. 200). Plaintiff has claimed that she received certain solicitations from the marketing department of some Harrah's properties regarding special events including one marked to Laurie Tsao. Id. at 189. She believed these mailings were an indication that marketing wanted her to come back to the properties. Id. at 201. She testified that she believed security had a different opinion but she did not know which one overrode the other. Id. None of these solicitations were marked for Monica Lieu, the alias Plaintiff was using at the time she was detained on March 19, 2008, however. There is also no evidence to suggest that Security Officer Makeley was aware that Plaintiff received any mailings from Harrah's properties under any of her aliases prior to his encounter with her on March 19, 2008.

### III.

### STANDARD FOR SUMMARY JUDGMENT AND L.R. 56-1 STATEMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As to this rule, the Supreme Court stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact and the evidence must be viewed in a light most favorable to the non-movant. See Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982). An issue is "genuine" if the evidence is such that a reasonable jury, applying the

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

applicable quantum of proof, could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether a fact is "material" depends on substantive law and whether the fact affects the outcome of the lawsuit. Id.

**Pursuant to Local Rule 56-1**, summary judgment is appropriate for Defendant DESERT PALACE for the following reasons and supported by the following exhibits or issues of law:

1.      On September 19, 2005, Plaintiff was legally trespassed from DESERT PALACE (i.e. Caesar's Palace) while using a false name. (Exhibit "E")(Plaintiff Depo. (Ex. C) pp. 31-32, 83-85, 200).

2.      On December 24, 2005, Plaintiff returned and was again legally trespassed from DESERT PALACE (i.e. Caesar's Palace) while using a false name. (Exhibit "F")(Plaintiff Depo. pp. 85-86, 200).

3.      On February 12, 2006, Plaintiff returned and was again legally trespassed from DESERT PALACE (i.e. Caesar's Palace), representing herself this time as Laurie Tsao. (Exhibit "G")(Plaintiff Depo. pp. 71-76, 87, 200).

4.      On January 23, 2007, Plaintiff was legally trespassed from the Rio Hotel and Casino under the name of Laurie Tsao. (Exhibit "H")(Plaintiff Depo. pp. 77-79, 200).

5.      On September 23, 2007, Plaintiff returned to DESERT PALACE and was legally trespassed under the name of Shuyu Deng. (Exhibit "I")(Plaintiff Depo. pp. 79-82, 200).

6.      On March 19, 2008, Plaintiff returned and this time was taken into custody and then turned over to the Las Vegas Metropolitan Police Department after trespassing at the DESERT PALACE (i.e. Caesar's Palace) and refusing to provide her name or identification. (Exhibit "C" pp. 93-97, 148-49, 200-01)(Exhibit "J")(Exhibit "K" pp. 42-43, 54, 60, 62)(Exhibit "L" pp. 34-35, 53-56, 91, 98-99)(Exhibit "M").

7.      Defendant DESERT PALACE could legally eject Plaintiff from their property on March 19, 2008 and on every occasion because it is a recognized common law right of a gaming establishment to exclude any person from gaming activities or eject any person from the premises of the establishment for any reason. (Exhibit "B").

/ / /

8.     Security Officer Clint Makeley had probable cause to believe Plaintiff had been trespassed prior to March 19, 2008 and returned to Caesar's Palace in disguise, using a false identity and in violation of the earlier trespass orders. (Exhibit "J")(Exhibit "K" pp. 42-44, 54, 60, 62).

9.     LVMPD Officer T. Crumrine arrested Plaintiff on March 19, 2008 because he believed that she presented false information to him regarding her identity while he was conducting a lawful investigation. (Exhibit "L" pp. 34-35, 53-56, 91, 98-99) ("M").

10.     Plaintiff has not presented evidence that she was ever made a defendant in a criminal case filed in Clark County, Nevada, for the trespass citation issued by virtue of the complaint of Caesar's Palace Security. (Exhibit "C" pp. 123-24)(Exhibit "L" pg. 100).

## IV.

## LEGAL ARGUMENT FOR FEDERAL CLAIM

**There are No Facts in the Record Supporting a Civil Rights Conspiracy Between Policy Makers of Desert Palace and any LVMPD Officer to Raise a Trialworthy Issue of Fact for Plaintiff's Section 1983 Claim for Relief.**

### A.     Summary of Argument

Plaintiff has developed no facts in discovery giving rise to a conclusion that policy makers from Desert Palace and LVMPD Officer Crumrine formed a joint venture aimed at violating Plaintiff's civil rights and succeeding in doing so. "A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts in concert with state agents to deprive one's constitutional rights." Fonda v. Gray, 707 F.2d 435, 437 (9th Cir. 1983). In addition, a municipal or corporate Defendant is only liable under Section 1983 when a policy making official promulgates a policy or custom that is the moving force behind a particular constitutional violation. See Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982)(Monell's holding is "equally applicable to the liability of private corporations"). Since Plaintiff only alleges unwarranted conclusions as to the existence of a conspiracy and the record is devoid of any Caesar's Palace policy maker involvement with Officer Crumrine, she cannot resist summary judgment on her claim for relief for a § 1983 conspiracy.

OLSON, CANNON, GORMLEY & DESRUISSEAUX
Law Offices of
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012   Telecopier (702) 383-0701

## B.  Color of Law Standard for Private Defendant and Elements of Civil Rights Conspiracy

A component to a prima facie action under Section 1983 is acting under color of state law.  The Supreme Court has interpreted the phrase "under 'color' of law" to mean "under 'pretense' of law."  Screws v. United States, 325 U.S. 91, 111, 65 S. Ct. 1031 (1945).  The state action criteria for Fourteenth Amendment claims are coextensive with the color of state law inquiry.  Governmental actors in pursuit of their legal duties or pursuant to state authority therefore generally act under color of law by definition.  The same, however, is not true by any stretch of the imagination for non-governmental entities such as Desert Palace.

A private entity, for purposes of Section 1983, is deemed to be acting under color of law only when it "is a willful participant in joint action with the State or its agents."  Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183 (1980).  To succeed on a "joint action" theory, a § 1983 plaintiff must thus establish the existence of a conspiracy, or an agreement on a joint course of action in which the private party and the state have a common goal.  See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002);  Fonda, 707 F.2d at 437.  In order to establish the existence of a conspiracy between a private party and a state actor, "an agreement or 'meeting of the minds' must be shown."  Id. at 438 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S. Ct. 1598, 1609 (1970)).  The mutual understanding must further constitute an agreement to deprive federally protected rights. See Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993); Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1352 (7th Cir. 1985).  Indeed, an overt act committed in pursuit of the conspiracy must actually cause Plaintiff to be deprived of a civil right.  Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989).  "Section 1983 authorizes recovery for conspiracy to violate a clearly established right, not the conspiracy itself." Easter House v. Felder, 852 F.2d 901, 920 (7th Cir. 1988); see also Compton v. Ide, 732 F.2d 1429, 1433 (9th Cir. 1984).  Allegations of conspiracy must be supported by material facts as opposed to conclusory allegations. Woodrum, 866 F.2d at 1126 (affirming district court's dismissal under Rule 12(b)(6) where plaintiff provided only conclusory allegations of conspiracy); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989); Williams v. Sumner, 648 F.Supp. 510, 513 (D.Nev. 1986).

## C. *Monell* Liability Standard

A municipal entity will only be liable under § 1983 when a constitutional deprivation comes directly from a plan or policy of the municipality. See id. at 690-91. Stated alternatively, liability will only attach when the "execution of the government's policy or custom . . . inflicts the injury" Id. at 694. Accordingly, there plainly cannot be liability under §1983 merely because a local governmental unit employed a tortfeasor. Id. at 694 n. 58. To prevent "municipal liability collaps[ing] into respondeat superior liability," federal courts are instructed to apply "rigorous standards of culpability and causation" in order to "ensure that the municipality is not held liable solely for the actions of its employees." Board of County Comm. of Bryan County v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 1389 (1997). The culpability standard is one of deliberate indifference.[2] Id. To satisfy the rigorous Monell requirements of causation and culpability, Plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of the policy." Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1993).

The law is well settled also that Monell and its innumerable progeny apply equally to private corporations sued under § 1983. A corporation acting under color of state law will only be held liable under § 1983 when it enacted an unconstitutional policy. See Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993)("A corporation acting under color of law will only be held liable under § 1983 for its own unconstitutional policies."). Specifically then, a private corporation is not liable under § 1983 for torts committed by employees when such liability is predicated solely on a respondeat superior theory of recovery. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 428 (2d Cir. 1990); Iskander v. Village of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982).

It is also important in this context to bear in mind that liability will attach to a municipal

---

[2] It should be noted that deliberate indifference is both purposeful and substantial and describes a state of mind more culpable than gross negligence. See City of Canton v. Harris, 489 U.S. 378, 388 n.7 (1989).

entity only where an official with final policy making authority with respect to the subject matter in question makes a deliberate choice to follow a course of action that causes a constitutional injury. See Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion). That is, in order for a local governmental unit or a conspiring corporation to be charged with a policy or custom it must have been approved, ratified or condoned by a policy making official. Whether a particular official rises to the level of a final policy-maker is purely a question of state law, City of St. Louis v. Prapotnik, 485 U.S. 112, 124, 108 S. Ct. 915 (1988), and "identification of those officials whose decisions represent the official policy of the local government unit is itself a legal question . . . ." Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989); see also Jackson v. Gates, 975 F.2d 648, 654 (9th Cir. 1992). Moreover, it is clearly established by recent controlling law in this jurisdiction that a single constitutional deprivation (when it is undertaken by a state actor without final policy making authority) is insufficient to establish a long standing practice or custom for purposes of Monell liability. See Christie v. Iopa, 176 F.3d 1231, 1235 (9th Cir. 1999); McDade v. West 223 F.3d 1135 (9th Cir. 2000). Plaintiff, accordingly, must plead and prove specific facts that a policy making official with Caesar's Palace and LVMPD Officer Crumrine formulated a conspiracy in order to show that the conspiracy constitutes an actual policy or practice of Defendant Desert Palace.[3]

All said then, Plaintiff's Monell claim must satisfy a total of four conditions against Caesar's Palace. These considerations are: (1) Plaintiff possessed a federal right which the LVMPD officer, acting under color of state law, violated or was jointly violated by the officer and Caesar's employees; (2) that there was a corporate policy of Caesar's to form conspiracies with police officers; (3) that this policy "amounts to deliberate indifference" to Plaintiff's constitutional rights; and (4) that the policy was the "moving force" behind an actual constitutional violation. See Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996), cert. denied, 519 U.S. 1111 (1997).

///

---

[3]Nevada law designates the Sheriff of Clark County as the person with authority to adopt policy for a metropolitan police department. See NRS 280.307.

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

### D.  Analysis and Conclusion: The Section 1983 Claim is Invalid.

To begin with, Plaintiff was not deprived of any civil right at all. The seizure initiated by LVMPD police officer Crumrine was supported by probable cause. That is, a reasonably objective officer in his position given the knowledge he had would believe that there is a fair probability that Plaintiff gave him false information relating to her identity and this constitutes a criminal act under Nevada law. As a civil litigant, Plaintiff, unlike in a criminal proceeding, bears the burden of proving the complete absence of probable cause or reasonable suspicion. See Stemler v. City of Florence, 126 F.3d 856, 871 (6th Cir. 1997); Gilker v. Baker, 576 F.2d 245 (9th Cir. 1978)(holding the plaintiff has the ultimate burden of proof to show absence of probable cause). The requirement of probable cause is satisfied when, at the time of the seizure, the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense. See Beck v. Ohio, 379 U.S. 89 (1964). The LVMPD officer involved developed facts indicating to any objective officer that there was probable cause to make an arrest. He gave her clear warning that she would be subject to an arrest if she did not give her correct name in answer to his question. The DMV records indicated that her last name was Tsao. She did not tell him that her last name was Tsao and acknowledged that it was her intent to keep this last name unknown to stay out of trouble. The existence of probable cause renders any Section 1983 claim invalid.

Secondly, even if Officer Crumrine mistakenly arrested her without sufficient justification under the Fourth Amendment, the arrest he made was free of any involvement from Caesar's employees. The uncontroverted facts are that he took her into custody after his investigation for conduct committed in his presence after he arrived on scene. Officer Crumrine believed she gave him false information as to her identity when he was performing an investigation. This seizure has nothing to do with the basis Caesar's security took her into custody. The essential element of causation is therefore lacking. See Martinez v. California, 444 U.S. 277, 285 (1980)(holding a §1983 prima facie case inherently entails tort-derived principles of proximate cause). The determination made by Officer Crumrine was independent of any

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012 · Telecopier (702) 383-0701

involvement of Caesar's employees and therefore there is no causal nexus to hold Desert Palace liable for a civil rights violation. Cf. Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir. 1988); Smiddy v. Varney, 665 F.2d 261, 266 (9th Cir. 1981), cert. denied, 459 U.S. 829 (1982)).

Third, Plaintiff here has not--and simply cannot in good faith--allege that any LVMPD police officer and a corporate official of Caesar's, with power to legally bind the corporation, together conspired to trample on Plaintiff's civil rights. Even assuming for purposes of argument that Officer Crumrine committed an unreasonable seizure, the record is barren of any evidence suggesting the moving force behind such a violation was a conspiratorial objective reached by policy making officials of Caesar's and a police officer. There is no evidence of any meeting of the minds between the top management of Caesar's with anyone from LVMPD. The case simply does not present a colorable claim for conspiracy against Defendant Caesar's Palace–a defendant that can only be held liable by causing Plaintiff to be deprived of civil rights as a result of a policy or custom promulgated by a policy making official.

In sum, the civil rights claim as a joint action against Defendant Caesar's is plainly ill-conceived given the elements of proof. There is no underlying constitutional violation. There is no causal relationship between the basis for the arrest made by Officer Crumrine and the involvement of Caesar's Palace security. What is more, the *Monell* element of a policy making official promulgating a policy or custom as the moving force of the violation is plainly devoid of evidentiary support. Therefore, there is no issue of fact with respect to an underlying constitutional deprivation, the elements of a constitutional conspiracy under Section 1983 and with respect to the rigorous Monell elements to prevail against a corporation. The lone federal claim for relief against Caesar's cannot resist summary judgment.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## LEGAL ARGUMENT FOR STATE LAW CLAIMS

A.  **Plaintiff's Tort Claims are Without Merits Because there Was Probable Cause for the Arrest and There Was Not Criminal Process Instituted Against Plaintiff.**

Desert Palace had probable cause to place Plaintiff in handcuffs and detain her until the arrival of the Las Vegas Metropolitan Police Department officer. The existence of probable cause insulates Desert Palace from liability for Plaintiff's state law claims of assault and battery, false imprisonment, intentional infliction of emotional distress, defamation and negligence. The Court has already held that Desert Palace has the legal authority to trespass Plaintiff. (Exhibit "B"). The evidence is undisputed that she was trespassed by security on multiple occasions before she was arrested on March 19, 2008. Plaintiff attempted time and again to avoid being arrested by using different names on each visit in hopes that, if she was approached by security, she would just be trespassed under a different name. Security recognized her as the person representing herself as Sheyu Deng on the day in question and took her into custody for violating a trespass order.

While a claim for abuse of process may exist despite the existence of probable cause, Plaintiff cannot cull facts from the discovery record suggesting Caesar's harbored an improper motive in requesting prosecution of a trespass charge following her sixth offense. Plaintiff further has no evidence proving that a criminal complaint was actually instituted against her for the misdemeanor offense of trespass. Accordingly, the state law claims brought under the supplemental jurisdiction of this Court also cannot withstand summary judgment.

### 1.  Assault and Battery

To establish an assault claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive physical contact, and (2) the victim was put in apprehension of such contact. See NRS 200.471; Restatement (Second) of Torts, § 21 (1965). Whereas the tort of battery is an intentional, offensive or harmful contact with another's person without legal justification. See N.R.S. 200.481. An officer is privileged to threaten the use and employ force against a person

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

lawfully detained so long as the force is not unreasonable. See People v. Allen, 22 Cal.App.4th 321, 27 Cal.Rptr.2d 502, 504 (1980)(holding a police officer is entitled to use force constituting a battery with probable cause for an arrest); Montgomery v. Bazaz-Shegal, 742 A.2d 1125, 1130 (Pa.Super.Ct. 1999)(holding officers are privileged to commit the torts of assault and battery during a lawful arrest supported by probable cause); Restatement (Second) of Torts §§ 18, 21 (1965). Thus, a security or law enforcement officer is immune from civil liability for the torts of assault and battery if there was a legal basis for the seizure and excessive force was not employed during the detention or arrest.

### 2. False Imprisonment

To establish false arrest/imprisonment, a plaintiff must demonstrate that they were restrained of their liberty under the probable eminence of force "without any legal cause or justification." Marschall v. City of Carson, 86 Nev. 107, 110, 464 P.2d 494 (1970). False arrest and false imprisonment are not separate torts. Rather, false arrest is merely one way to commit false imprisonment. 32 Am. Jur. 2d, False Imprisonment, § 2. The Nevada Supreme Court has agreed by holding "[t]o establish false imprisonment of which false arrest is an integral part, it is . . . necessary to prove that the person being restrained of his liberty under the probable imminence of force without any legal cause or justification." Hernandez v. City of Reno, 97 Nev. 429, 433, 634 P.2d 668, 671 (1981). "If [the imprisonment] has been extrajudicial, without legal process, it is false imprisonment." Catrone v. 105 Casino Corp., 82 Nev. 166, 168, 414 P.2d 106, 107 (1966). There is no false arrest or false imprisonment when the seizure is supported by probable cause for an arrest or reasonable suspicion for an investigative detention. See Hernandez, 97 Nev. at 433, 634 P.2d at 671; see also NRS 171.123(1); Somee v. State, 187 P.3d . 152, 158 (Nev. 2008).

/ / /

### 3.     Intentional Infliction of Emotional Distress

Plaintiff must establish: (1) that Defendants' conduct was extreme and outrageous; (2) that Defendants either intended or recklessly disregarded the causing of distress; (3) that she actually suffered severe or extreme emotional distress; and (4) that Defendants' conduct actually or proximately caused the distress. See Nelson v. City of Las Vegas, 99 Nev. 548, 554, 665 P.2d 1141, 1145 (1983); Star v. Rabello, 97 Nev. 124, 625 P.2d 90 (1991). The Restatement (Second) of Torts, § 46 defines outrageous conduct causing severe emotional distress by stating:

> It has not been enough that the Defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the Plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme a degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

"Liability is only found in extreme cases where the actions of the defendant go beyond all possible bounds of decency, is atrocious and utterly intolerable." Hirschhorn v. Sizzler Restaurants International, Inc., 913 F. Supp. 1393, 1401 (D. Nev. 1995). It has been said that this tort is reserved for conduct on "the farthest reach of socially tolerable behavior." Anderson v. Fisher Broadcasting Cos., 300 Ore. 452, 712 P.2d 803, 807 (Or. 1986).

In the context of false arrest, the existence of probable cause defeats in and of itself a claim for intentional infliction of emotional distress as there is no underlying outrageous or extreme misconduct. See Kotsch v. District of Columbia, 924 A.2d 1040, 1046 (D.C. 2007); Croft v. Grand Casino Tunica, Inc., 910 So.2d 66, 75 (Miss. App. 2005). In fact, even if the Desert Palace security officer in this case made an arrest on a mistaken belief that there was probable cause, the facts still would not support a claim for intentional infliction of emotional distress. See Tavakoli-Nouri v. State, 139 Md. App. 716, 779 A.2d 992 (Md. App.

2001)(making a public arrest, dragging the arrestee across the premises in handcuffs and then conducting an interrogation was not extreme or outrageous conduct to give rise to an intentional infliction of emotional distress claim).

### 4. Defamation

In order to establish a prima facie case of defamation, a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault; and (4) actual or presumed damages. Simpson v. Mars Inc., 113 Nev. 188, 190 (1997)(citing Chowdhry v. NLVH, Inc., 109 Nev. 478, 483, 851 P.2d 459, 462 (1993)). In addition, a statement is defamatory only when "[u]nder any reasonable definition such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt." Las Vegas Sun v. Franklin, 74 Nev. 282, 287, 329 P.2d 867, 869 (1958). In Nevada, to prevail on a defamation claim, a party must show publication of a false statement of fact. Wellman v. Fox, 108 Nev. 83, 86, 825 P.2d 208, 210. The existence of probable cause provides justification for the act of handcuffing and shields a defendant from a claim of defamation. See Richard v. Supervalu, Inc., 974 So.2d 944 (Miss. App. 2008); Fleming v. U-Haul Co. of Georgia, 541 S.E.2d 75, 77 (Ga. App. 2001).

### 5. Negligence

To prove a claim of negligence, Plaintiff must show by a preponderance of the evidence that: (1) Defendant had a duty to exercise due care towards Plaintiff; (2) Defendant breached that duty; (3) the breach was the actual cause of Plaintiff's injury; (4) the breach was the proximate cause of the injury; and (5) damages. See Perez v. Las Vegas Medical Center, 107 Nev. 1, 4, 805 P.2d 589, 590-91 (1992). Duty is the first element of negligence and is a question of law for the Court to decide. See Scialabba v. Brandise Const. Co., 112 Nev. Adv. Op. 126, 921 P.2d 928, 930 (1996); Doud v. Las Vegas Hilton Corp, 109 Nev. 1096, 1100, 864 P.2d 796, 798 (1993).

The touchstone for a common law duty is foreseeability of harm. See Merluzzi v. Larson, 96 Nev. 409, 414, 610 P.2d 739, 742 (1990). There is no breach of a lawful duty when the seizure is supported by probable cause.

Moreover, recovery for negligence in investigating and prosecuting a crime has been uniformly and specifically rejected in a myriad of state courts throughout the nation.[4] Federal courts have likewise rejected the claim for negligent investigation of crime.[5] One court surveying the jurisprudential landscape noted that its research "uncovered no states that have held that a cause of action for negligent investigation exists." Wimer v. State, 841 P.2d 453, 455 (Idaho App. 1992).

## B. There Was Probable Cause to Arrest and Institute Criminal Proceedings Against Plaintiff

Plaintiff, unlike a criminal proceeding, bears the burden of proving the complete absence of probable cause. See Stemler v. City of Florence, 126 F.3d 856, 871 (6th Cir. 1997); Gilker v. Baker, 576 F.2d 245 (9th Cir. 1978)(holding the plaintiff has the ultimate burden of proof to show absence of probable cause). The requirement of probable cause is satisfied when, at the

---

[4] See e.g., Waskey v. Municipality of Anchorage, 909 P.2d 342, 344-45 (Alaska 1996); Landeros v. City of Tucson, 831 P.2d 850, 851 (Ariz. App. 1992); Johnson v. City of Pacifica, 4 Cal. App. 3d 82, 84 Cal. Rptr. 246, 249 (Cal. App. 1970); Montgomery Ward Co. v. Pherson, 272 P.2d 643 (colo. 1954); Wilson v. O'Neal, 118 So.2d 101, 105 (Fla. App. 1960), cert. denied, 503 U.S. 850 (1961); Wimer v. State, 841 P.2d 453, 455 (Idaho App. 1992); Smith v. State, 324 N.W.2d 299, 302 (Iowa 1982); Brown v. State of Kansas, Sedgwick Co. Comm., 92 P.2d 938, 943 (Kan. 1996); Flones v. Dalman, 502 N.W.2d 725, 729 (Mich. App. 1993); Drake v. State, 482 N.Y.S.2d 208, 210 (N.Y. Ct. Cl. 1984); Gisondi v. Harrison, 120 A.D.2d 48, 507 N.Y.S.2d 419, 423 (N.Y. App. Div. 1986); Boose v. Rochester, 71 A.D.2d 59, 421 N.Y.S.2d 740, 744 (N.Y. App. Div. 1979); Dever v. Fowler, 816 P.2d 1237, 1242 (Wash. 1991); and Bromer v. Holt, 129 N.W.2d 149, 153-154 (Wis. 1964).

[5] Rodriguez v. United States, 245 F.3d 98, 102 (2d Cir. 1994) (applying New York law in FTCA action and rejecting claim that police officers failed to exercise due care in effecting arrest); Rodriguez v. Ritchey, 556 F.2d 1185 (5th Cir. 1977), cert. denied, 434 U.S. 1047 (1987) (holding no federal common law tort of negligent investigation); Dirienzo v. Untied States, 690 F. Supp. 1149 (D. Conn. 1988) (finding no common law cause of action for negligently instituting or continuing a criminal prosecution).

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

time of the seizure, the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense. See Beck v. Ohio, 379 U.S. 89 (1964). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 214, 244 n.13, 103 S. Ct. 2317 (1983). The standard is not one of absolute certainty but rather a fair probability or reasonable trustworthiness that the arrestee had committed the crime. See United States v. Potter, 895 F.2d 1231, 1233-34 (9th Cir.), cert. denied, 497 U.S. 1008 (1990). This "flexible, commonsense approach" does not require that the officer's belief be correct or even more likely true than false, so long as it is reasonable. Wollin v. Gondert, 192 F.3d 616, 623 (7th Cir. 1999)(quoting Texas v. Brown, 460 U.S. 730, 742, 103 S. Ct. 1535 (1983)). Contrary to what its name might seem to suggest, therefore, probable cause "demands even less than probability." United States v. Moore, 215 F.3d 681, 685 (7th Cir. 2000).

In making this determination the court should look at the totality of the circumstances and use a common sense approach to issues of probable cause. See Sharar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997). Law enforcement officers may draw upon their experience and expertise in determining the existence of probable cause. See United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir. 1989), cert. denied, 498 U.S. 825 (1990). In recognition of the endless scenarios confronting police officers in their daily regimen, courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person in the position of the arresting officer–seeing what he saw, hearing what he heard." Mahoney v. Kersery, 976 F.2d 1054, 1057 (7th Cir. 1992). The pertinent inquiry, therefore, is whether "the knowledge of facts, actual or apparent, are strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the

manner complained of." <u>Rounseville v. Zahl</u>, 13 F.3d 625, 629 (2d Cir. 1994).

Security Officer Clint Makeley took Plaintiff into custody because he was aware of facts that Plaintiff had been trespassed previously and had returned to Caesar's Palace despite that trespass. These two facts are uncontroverted and establish a fair probability that Plaintiff participated in intentional conduct that constitutes a criminal act under the laws of the State of Nevada. NRS 207.200(1)(b) holds a person guilty of a misdemeanor when he or she "wilfully goes or remains upon any land or in any building after having been warned by the owner or occupant thereof not to trespass . . ." Plaintiff has been warned in fact on five prior occasions and allowed to leave under her own freedom with the instruction to not return. She returned to Caesar's of her own volition while attempting to conceal her appearance and while representing herself as Monica Liu (a false name). Officer Makeley examined the photographs of Plaintiff when she was trespassed under the name of Sheyu Deng and confirmed that Plaintiff was the same person. Based upon these facts and circumstances, Officer Makeley was aware of facts giving him a reasonable assurance that Plaintiff was guilty of a criminal act when he took her into custody. The existence of probable cause eliminates a necessary element for all of Plaintiff's claims except arguably the one for abuse of process. Thus, Plaintiff's causes of action for assault and battery, false imprisonment, intentional infliction of emotional distress and negligence succumb to summary judgment.

C.  **Plaintiff Cannot Establish Facts Suggesting Caesar's Palace Instituted a Criminal Action for an Ulterior Reason Unrelated to Its Intended Purpose.**

The tort of abuse of process requires a showing of (1) an ulterior purpose other than resolving a legal dispute, and (2) a wilful act in the use of process not proper in the regular conduct of the proceeding. <u>Dutt v. Kremp</u>, 111 Nev. 567, 894 P.2d 345, 357 (Nev. 1995). The Restatement (Second) of Torts defines the principle as "one who uses a legal process, whether

criminal or civil, against another primarily to accomplish a purpose for which it is not designed . . . ." § 682 (2008). Accordingly, a necessary element of a claim of abuse of process is the actual initiation of a civil or criminal litigation. See id cmt a; see also In re American Continental/Lincoln S&L Sec. Lit., 845 F.Supp. 1377, 1379 (D. Ariz. 1993)(holding allegation of pre-process activities failed to state an abuse of process claim since the threat of suit cannot constitute a wilful act for the tort). A spiteful motive is also not enough for abuse of process when the process is used only for the purpose for which it was designed and intended. See Matossian v. Fahmie, 101 Cal.App.3d 128, 161 Cal.Rptr. 532 (1980).

The most fundamental failing in Plaintiff's abuse of process claim is there is no evidence that the State of Nevada (through a Clark County prosecutor) filed criminal charges against Plaintiff for trespass. Plaintiff and Officer Crumrine testified consistently that neither was called to appear in court. Plaintiff has not produced any documents indicating that charges were ever filed and there is no record of Laurie Tsao (or any other variant of Plaintiff's names) in the public records website for Clark County, Nevada. Moreover, Caesar's Palace has no tort liability based upon a Security officer's personal preference to see Plaintiff prosecuted because she failed to comply with five earlier trespass orders. It was apparent that just being removed from the property and merely threatened with arrest if Plaintiff returned was an insufficient deterrent as Plaintiff returned to Harrah's properties time and again. Plaintiff's prior trespasses and her presence at Caesar's Palace on the day in question moreover is undisputed. The absence of probable cause is not a necessary element of the tort but it is clearly relevant to demonstrate that there was no ulterior purpose underlying the institution of a court case.

Plaintiff has absolutely no evidence to suggest there was any other ulterior purpose by any Caesar's Palace employee to use the criminal process for a purpose legitimate prosecutorial purpose. Simply stated, the abuse of process claim is feeble, if not frivolous.

OLSON, CANNON, GORMLEY & DESRUSSEAUX
Law Offices of
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701

## **CONCLUSION**

IN ACCORDANCE WITH THE FOREGOING, Defendant DESERT PALACE INC. respectfully urges this Court to grant the motion for summary judgment as there are no facts raising a genuine issue of material fact after the close of the discovery phase of the litigation. Plaintiff's Section 1983 claim is simply deficient in every meaningful respect. There is no underlying constitutional infirmity, no evidence of conspiracy, utter absence of proximate cause and no evidence of involvement of a Caesar's Palace policy making employee. The state law claims likewise fall short of the mark since the facts establish that there was probable cause to arrest Plaintiff and no basis to infer that Defendant caused Plaintiff to be entangled in a criminal case due to an impermissible and ulterior purpose. Summary judgment therefore follows for each and every claim alleged in the Complaint.

RESPECTFULLY SUBMITTED this _8_ day of February, 2009.

OLSON, CANNON, GORMLEY &
DESRUISSEAUX

By: _____
DAVID M. JONES, ESQ.
Nevada Bar No. 004647
THOMAS D. DILLARD, JR., ESQ.
Nevada Bar # 005964
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Attorneys for Defendant
DESERT PALACE, INC.

Law Offices of
OLSON, CANNON, GORMLEY & DESRUISSEAUX
A Professional Corporation
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
(702) 384-4012    Telecopier (702) 383-0701