Robert A. Nersesian
Bar No.: 2762
**NERSESIAN & SANKIEWICZ**
528 South Eighth
Las Vegas, Nevada 89101
Phone: (702) 385-5454
Fax: (702) 385-7667
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Laurie Tsao, a/k/a Laurie Chang )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>)<br>Desert Palace, Inc., T. Crumrine, and Does )<br>I-XX, jointly and severally )<br>)<br>Defendants. )<br>_____ ) | Case No. 2:08-cv-00713-RCJ-GWF |

## <u>RESPONSE AND MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CAESARS PALACE'S MOTION FOR SUMMARY JUDGMENT</u>

Now comes plaintiff, and herewith responds to the motion of Desert Palace, Inc. ("Caesars"), for summary judgment. This opposition is based on the following memorandum of points and authorities and the attachments hereto. Plaintiff contends that Caesars is not entitled to Summary Judgment.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>I. REPLY TO CAESARS'S STATEMENT OF FACTS</u>

Plaintiff freely admits to using aliases in her profession as a professional advantaged gambler. Caesars has taken this to the extreme, peppering its brief with dozens of irrelevancies concerning the plaintiff's use of aliases in an attempt to sway this court. The bottom line is that

such activity is not illegal. *See Chen v. Nevada State Gaming Control Bd.*, 994 P.2d 1151 (Nev. 2000). Indeed, it is well reported as not illegal in the casino industry, and would be so known to security, surveillance, legal, and game protection personnel. *See* BLACKJACK AND THE LAW, Prof. I. Nelson Rose and Robert A. Loeb, Esq. (RGE Press, 1998), at Chap. 5, Identification and False I.D., p. 91 ("[F]or a professional player . . . the use of an alias may be the only way to protect his livelihood."), BEYOND COUNTING, EXPLOITING CASINO GAMES FROM BLACKJACK TO VIDEO POKER, pp. 26-27, James Grosjean (RGE Press, 2000). The rule is ancient, oft repeated, and straight-forward, "individuals . . . may legally call themselves anything they wish, despite the lay concept of a person's "real" name, provided of course the name is not used for an illegal purpose." *United States v. Dunn*, 564 F.2d 348, 354 (9th Cir. Cal. 1977).[1]

The operative facts in this case are that Caesars placed plaintiff in handcuffs and conducted a citizen's arrest upon her for an alleged violation of NRS 207.200 (the trespassing statute). Plaintiffs play at other casinos under different names, or even at Caesars under different names has nothing to do with this case, or Caesars' liability. Rather, the core issue is whether Caesars illegally interfered with plaintiff's liberty. As shown below, the answer to this question is yes.

At paragraphs 1 and 2 of Caesar's LR 56.1 statement, Caesar's brief, p. 6, ¶ 1 and 2, and at p. 9, ¶ 1 and 2, Caesars states that plaintiff was using a "false name." In fact, these names were not false names, and were not even aliases. Each is plaintiff's name. Affidavit of Plaintiff, ¶¶ 7-16. Plaintiff was not using a false name as defendant states. Plaintiff very clearly states in the cited deposition testimony that the name Cao, Hong referenced is her name, and Cao is her

---

[1] The citation to *Dunn* is particularly appropriate because the Ninth Circuit Court of Appeals was chastising the prosecutors for smearing the defendants with pejorative inferences which they tied to innocuous and legal activity. This is Caesars ploy here as well.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

birth surname.  In fact, in her entire historic prior interaction with Caesars prior to this incident, there is only one use of an alias, and under the law above, that is not an issue.  As to the legality, until 1998 California not only recognized the law concerning aliases, but duplicate licenses in the alias name would be issued by the California DMV.  *See* <http://www.ocregister.com/feature/dmv/dmv00924> viewed 3/3/09.  As noted, this is all just rigmarole about nothing.

## II. RELEVANT FACTS

1. Plaintiff received invitations to Caesars subsequent to any previous trespass warning.

2. On March 19/ 1998, Plaintiff was taken into custody by Caesars Security Supervisor, Clint Makely.  Party admission, Lodged Video at 5:48:10.

3. Makely and Caesars had arrested plaintiff.  ("Now that we've arrested you.").  Party admission, Lodged Video, 5:36:01.

4. Caesars had the ability through arrangement with the police to issue tickets under a program known as SILA for summons in lieu of arrest.  In fact, Makely, the security supervisor detaining plaintiff, went through a five hour class to be trained and gain the authority to issue criminal summonses to persons for trespassing, defrauding an innkeeper, and petty larceny.  Makely Deposition Excerpts, exhibit 3, p. 42.

5. It was Makely's original intention to issue plaintiff a summons in lieu of arrest, and he didn't do that because plaintiff had no identification on her.  Makely Deposition Excerpts, exhibit 3, pp. 18-19.

6. Makely received training in the SILA program.  Party admission, Lodged Video, 5:36:27.

7. Makely and LVMPD police officer/defendant, Crumrine, jointly signed a criminal "Citation/Complaint" charging plaintiff with trespassing.  Exhibit 5.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

8. Michael Kostrinsky, the "Chief Legal Officer" of Harrah's Entertainment, and a senior control person for Harrah's also controlling legal matters relative to Caesars received a demand on behalf of plaintiff that the charges brought by Makely be withdrawn together with an explanation of why no crime was committed. Exhibit 6.

9. His response to exhibit 6 ratified and attempted to justify the actions of Caesars through Makely. Exhibit 7.

10. Despite his refusal to withdraw the criminal charges against plaintiff, return correspondence on plaintiff's behalf explained particularly that he was the person with the ability to mitigate exposure to legal liability and a control person at the echelon to speak for the corporation, and that in failing to exercise such control through withdrawing the criminal process it would be apparent that Caesars, as a corporate body, was ratifying, adopting, and approving the actions of Makely in arresting and imprisoning the plaintiff. Exhibit 8.

11. No action was taken on this correspondence by Caesars. Affidavit of Robert A. Nersesian, exhibit 9, ¶ 33.

### III. ANALYSIS

#### A. JURY QUESTIONS EXIST THAT FORECLOSE SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL CLAIM AGAINST CAESARS

#### 1. SUFFICIENT FACTS EXIST TO SHOW PRIVATE PARTY LIABILITY UNDER 42 U.S.C. 1983 AS TO CAESARS

Caesars grossly understates the circumstances in which a private actor can be found responsible under 42 U.S.C. 1983. Per Caesars, only when an overt and agreed conspiracy/agreement between the police authority and a private actor can be shown, with the express goal of depriving a person of their civil rights, can liability be established.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

Rather, the broader test is generally stated as requiring that there by "a sufficiently closed nexus between the state and the challenged action of [the private actor] so that the action of the latter may be fairly treated as that of the state itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). It is not only a conspiracy which results in private actor liability, but the meeting of any three discrete tests, or the compilation of items between the tests such that state action under the *Blum* standard is met.

The three tests enunciated by the United States Supreme Court are 1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state, 2) whether the private party has acted with the help of or in concert with state officials, or 3) when the state has so infused itself into a position of interdependence with the private party that it must be recognized as a joint participant in the challenged activity. *See respectively*, *Evans v. Newton*, 382. U.S. 296 (1966), *Lugar v. Edmondson Oil Co.*, 457, U.S. 922, 941-42 (1982), and *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961). Note that this last test is the test discussed by Caesars, and it is not nearly so broad as the overt and express conspiracy argued by Caesars.

More succinctly, as the court in *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. Mich. 2005), a case similar to the current matter, stated:

> A private actor acts under color of state law when its conduct is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947, 73 L. Ed. 2d 482, 102 S. Ct. 2744 (1982). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Chapman*, 319 F.3d at 833 (citing *Wolotsky*, 960 F.2d at 1335). *See West v. Atkins*, 487 U.S. 42, 49-50, 101 L. Ed. 2d 40, 108 S. Ct. 2250 (1988) (public function); *Flagg Bros.*, 436 U.S. at 157 (same); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970) (state compulsion test); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-26, 6 L. Ed. 2d 45, 81 S. Ct. 856 (1961) (symbiotic relationship or nexus test).

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

Nevertheless, the conspiracy or joint action test is clearly met.  Attached is exhibit 5, is the "citation/complaint" issued to plaintiff on the date in question.  The following statement is jointly signed by Crumrine, a Las Vegas Metro Police Department Officer, and Clinton Makely, Caesars top security officer on the night in question:

> "I certify (or declare) that I have reasonable grounds/probably
> cause to believe and do believe that the above named person
> committed the above named offenses contrary to law."

It is difficult to fathom a more direct concerted action than jointly swearing out criminal process against the plaintiff.  Caesars errs.  Further, this is a far cry from the "no evidence" position that Caesars forwards, and whether there is joint action presents a question for the jury.

Still, this is not the only evidence, and in this case there exists determinative evidence establishing that Caesars actions against plaintiff constitute state action rendering Caesars answerable in an action under 42. U.S.C. 1983.  Pointedly, in this case Caesars' undertook its initial detention/seizure of plaintiff on the basis of exercising powers that are traditionally the exclusive prerogative of the state thus meeting the public function test for state action.

Here Makely testified that he originally detained the plaintiff with the expectation of issuing her a citation under the SILA program and having her on her way.  The citation issued, exhibit 5 constitutes criminal process.  *See  In re 1990 Red Cherokee Jeep*, 505 S.E.2d 588, 591 (N.C. Ct. App. 1998), *State v. Sacta*, 1996 Minn. App. LEXIS 698 (Minn. Ct. App. (1996), *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, etc.*, 605 F.2d 1228, 1250 (2d Cir. N.Y. 1979), *Sheldon v. Sheldon*, 134 A. 904, 905 (N.J. Ch. 1926), *State v. Klump*, 813 P.2d 131, 133 (Wash. Ct. App. 1991), *accord McDorman v. Smith*, 437 F. Supp. 2d 768, 779 (N.D. Ill. 2006).  Here the Las Vegas Metropolitan Police Department has ceded to private security forces the traditionally exclusive government function of issuing tickets/citations to individuals.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

As noted in *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 637 (6th Cir. Mich. 2005), "when the state delegates a power traditionally reserved to it alone - the police power - to private actors in order that they may provide police services to institutions that need it, a "plaintiff's ability to claim relief under § 1983 [for abuses of that power] should be unaffected." In *Romanski*, the casino defendant was held liable as a state actor for its exercise of plenary arrest power exceeding that of a traditional citizen's arrest. While there is obviously authority for the prospect of an arrest by private parties (citizen's arrest), there is no history of anyone other than the state to issue citations, commence criminal process, and compel someone, through summons at risk of contempt or crime, to appear and answer for criminal charges. Here plaintiff's initial detention (which ripened into an outright arrest) was made by Caesars under authority traditionally reserved and exercised exclusively by the state. There is direct evidence of Caesars' actions being actions traditionally exercised exclusively by the state and the actions being taken under ceded state authority. This is state action personified under the public function test, and summary judgment is unwarranted on this basis.

Further addressing Caesars statement that there is "no evidence," in addition to the items set forth above, there remains a plethora of additional evidence. The police officer in this case ignored his duty to consider all factors and his duty to conduct an investigation[2] solely on the word of Makely. Excerpts of Crumrine Deposition, exhibit 4, pp. 77-78. Makely also represented to plaintiff that his original intent was to write her a ticket--a government function.

---

[2] *See Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1346 (7th Cir. Ill. 1985) ("[I]t is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention."), *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000), *reh. denied*, 2000 U.S. App. LEXIS 7027 (6th Cir. 2000), *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999), *Baptiste v. J. C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. Colo. 1998).

-7-

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

Lodged Video at 5:44:45. The trespassing ticket was prepared by Crumrine for Makely's signature, and apparently it was not expected that Makely even read it (in fact he did not read it). Excerpts of Makely Deposition, exhibit 3, p. 74. In short, as a matter of law (concerning the SILA program), Caesars' actions were state action, and as a matter of a direct and joint writing (concerning the ticket), Caesars and the State acted in concert. In addition to this there is the further evidence set forth above showing action in concert by the State and Caesars. Caesars errs when it states that there is no evidence, and there is certainly sufficient evidence foreclosing summary judgment.

## 2. PLAINTIFF MEETS THE APPLICATION OF THE MONELL TEST UNDER THE FACTS OF THIS CASE, AND SUMMARY JUDGMENT IS UNWARRANTED

Stepping away from Caesars' exaggeration and hyperbole, the test from *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) can be summed up very easily: If the actions of the actor in the employ of the defendant are in accord with the policies and procedures established by persons with authority to make those policy decisions, and those actions violate the plaintiff's rights under 42 U.S.C. 1983, then the corporation is liable. The Ninth Circuit has enumerated the factors to be examined as follows:

> "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"

*Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. Cal. 1996). Caesars bastardizes this policy and states it as:

> 1)Plaintiff possessed a federal right **which the LVMPD officer, acting under color of state law, violated or was jointly violated by the officer and Caesar's employees;** 2) that there was a corporate policy of Caesar's **to form conspiracies with police officers**; 3) that this policy "amounts to deliberate indifference" to plaintiff's

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

constitutional right**s**; and 4) that the policy was the "moving force" behind an actual constitutional violation.

(Emphasis added). Caesars' Brief, p. 13. The emphasized portions of Caesars statement are obviously just made up, and do not appear in the decision. Moreover, some of it is just plain wrong.

For example, once plaintiff demonstrates that Caesars is a state actor for purposes of liability, it is not the actions of the LVMPD officer that are examined, but rather, the actions of Caesars. Caesars gets element (1) exactly backwards. There is no requirement that the plaintiff show that the corporate policy was to form conspiracies, Caesars' element (2). The test is obviously whether a corporate policy was complied with by the actor that resulted in a deprivation of plaintiff's constitutional rights by Caesars acting under color of law. As shown above, conspiracy is but a single method of showing state action. Here element (1) is best shown on the lodged dvd at 5:22-5:23 where plaintiff is seized under the SILA policy and program before any LVMPD involvement.

The other place where Caesars grossly misrepresents *Monell* is the concept that the policy or procedure at issue must somehow come from the board or like circumstance. The policy can come from the person to whom the corporation delegates the ability to make the policy or procedure at issue. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) (plurality opinion). Here the persons making the decisions and implementing the policies resulting in plaintiff's seizure were Makely, Caesars' senior security person on sight, with the participation and ratification of the Casino manager. Excerpts of Makely Deposition, exhibit 3, pp. 55-57.

More importantly, the decision here was ratified at the highest levels of the decision making process at Caesars. The Chief legal officer was given the facts and given the ability to disavow the actions of the persons undertaking the action at issue. He was even told that the

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

failure to disavow could only be viewed as ratification because plaintiff was still at risk of criminal prosecution due to the violative decisions of Makely and the casino manager in this instance. *See* exhibits 6 and 8. Nevertheless, he chose to ratify and support the actions of these employees. Exhibit 7. Thus, the casino supervisor, the security supervisor, and the chief legal officer all marched lock-step in the seizure of the plaintiff. Each had the ability to establish the policy to be followed in the circumstance, each had the ability to implement a policy or procedure that would have avoided the incident or the continued risk of prosecution to the plaintiff, and each chose to take the actions. This is the establishment and implementation of policy at the necessary decision making level personified, and there is no basis for summary judgment. Additionally, there would be a presumption that the actions of the employee were in accord with policy, and Caesars again has it backwards. Is Caesars now saying that Makely violated the policies and procedures of Caesars? Of course not.

Another problem with Caesars analysis is that the Ninth Circuit has never addressed the argument. Item 3[3] of the test is obviously constructed to address a factor specific to qualified immunity as 42 U.S.C. is not drafted in the form of intent, but result. The intent portion arises in the context of the judicial gloss placed on the statute originating in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), which establishes the doctrine of qualified immunity. The United States Supreme Court has <u>never</u> extended governmental immunity to a private party. *Richardson v. McKnight* 521 U.S. 399, 412 (1997) (privately employed prison guards not entitled to immunity); *Wyatt v. Cole*, 504 U.S. 158, 167 (1992)("[W]e conclude that the rationales mandating qualified immunity for public officials are not applicable to private parties."). The Ninth Circuit has consistently held that there is no qualified immunity for private persons.

---

[3] "That this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right."

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

*Gonzalez v. Spencer*, 336 F.3d 832 (9th Cir. 2003), *cert. denied* 540 U.S. 940 (2003); *Jensen v. Lane County*, 222 F.3d 570, 580 (9th Cir. 2000); *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002); *Halvorsen v. Baird*, 146 F.3d 680, 685 (9th Cir. 1998); *Conner v. City of Santa Ana*, 897 F.2d 1487, 1492 n. 9 (9th Cir. 1990); *F.E.Trotter v. Watkins*, 869 F.2d 1312, 1318-19 (9th Cir. 1989); *Benigni v. City of Hemet,* 879 F.2d 473, 479-80 (9th Cir. 1988); *Howerton v. Gabica*, 708 F.2d 380, 385 n. 10 (9th Cir. 1983).   With this being the law in this circuit, item 3, deliberate indifference within the policy, would have no application in this matter.

As to the policy being the "moving force," and the "deliberate indifference," Caesars grants invitations to persons who have been previously trespassed.  Exhibit 1.  The evidence shows that they have no cross-reference system with security showing that these trespass warnings have been rescinded.  The natural consequence of these two evident policies interacting is the illegal arrest of persons in plaintiff's position.  This certainly presents, at a minimum, a jury question on the issue.

Further deliberate indifference can be shown by Makely stating the policy of Caesars and refusing to consult with plaintiff's counsel (who had the trespass revoking invitation in his hand) during the event.  *See* Makely deposition excerpt, p. 69.  It is also within the policies and procedures that in consulting the casino manager, even if the casino manager has information exculpatory to the plaintiff (e.g., she was an invited guest at the casino), and recognized that the plaintiff was being arrested, the security supervisor would not expect to receive the critical information of the revocation of the trespass.  Makely deposition excerpt, pp. 76-79.  More deliberate indifference is evident.  As to the policies being the moving force, this is clearly the case because the constitutional deprivation was the unreasonable seizure of the plaintiff, and the

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

policies were to seize this invited guest with all the deliberate indifference exhibited above as well as the ratification and establishment by ranking executives at the highest level.

Additionally, the application of the *Monell* rule to private casinos acting with state action through their security department can be seen in the exemplary cases of cases of *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 636 (6th Cir. Mich. 2005), and *Grosch v. Tunica County*, No. 2:06CV204-P-A, 2009 U.S. Dist. LEXIS 4966 (N.D. Miss. 2009). Each case is analogous to the case before this court. In each case the casino was found liable for violation of 42 U.S.C. 1983. In each case the casino's security officers had detained the plaintiff without legal authority. The evidence of the policies and procedures were not nearly so clear as those before this court. Yet, in addition to liability, multiple six figure punitive damage awards entered against the casino.

The best evidence of the policies and procedures of Caesars, and indeed, direct evidence, is the actions taken by its employees. If Caesars disavowed such action, or in any way questioned the actions of its employees as being within the policies and procedures of the company, they would say so. Instead, the actions are expressly authorized and ratified, pre-suit, by the Chief Litigation Officer. *Monell* has no application in this matter.

### B. PLAITIFF'S STATE LAW CLAIMS ARE VIABLE AND PROPER

Defendant states, without a scintilla of authority, that "The existence of probable cause insulates Desert Palace from liability for Plaintiff's state law claims . . .". Caesars Brief, p. 16. This presents a direct misstatement of the law, and moreover, probable cause did not exist.

As to probable cause not being a defense, this is well established. [T]he defense of probable cause is not applicable in actions for false imprisonment. *Nelson v. Kellogg*, 123 P. 1115, 1116 (Cal. 1912). As noted in *Strozzi v. Wines*, 55 P. 828, 829 (Nev. 1899), "It is not

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

essential, in an action for false imprisonment, to allege or prove malice or want of probable cause in order to recover damages for injuries actually occasioned thereby." *See also Daniels v. Milstead*, 128 So. 447, 448 (Ala. 1930),[4] *Nesmith v. Alford*, 318 F.2d 110, 119 (5th Cir. Ala. 1963) ("The lack of malice, the presence of good faith, or the presence of probable cause do not affect the existence of the wrong when the detention is unlawful."), *Garnier v. Squires*, 62 P. 1005, 1007 (Kan. 1900), *Mahan v. Adam*, 124 A. 901, 905 (Md. 1924), *Adair v. Williams*, 24 Ariz. 422, 433 210 P. 853 (1922). As noted in Prosser & Keaton on Torts, 5th Ed., § 26, the authority of a "private person" to arrest depends upon the fact of the crime, and he must take the full risk that none has been committed. In other words, if he mistakenly believes a crime was committed, and he is arresting for that crime, he remains liable for false imprisonment if no crime was committed. Caesars, without citation, flagrantly and directly made up a rule of law contrary to the general rule and contrary to direct Nevada authority.[5]

The rationale here is simple. False imprisonment is the detention of another without legal authority. Nev. Rev. Stat. 200.460. The "legal authority" for a casino to detain a person is well defined in Nevada statutes. They can detain a person on reasonable suspicion that the person committed a felony. Nev. Rev. Stat. 171.1235. They can detain a person on probable cause for the criminal violation of a gaming law. Nev. Rev. Stat. 465.101. They can also detain a person in the form of a citizen's arrest for an actual crime committed as allowed in Nev. Rev. Stat. §§ 171.104 and 171.126. Caesars does not argue that an actual crime was committed, only

---

[4] "In false imprisonment, the essence of the tort is that the plaintiff is forcibly deprived of his liberty, and the good intent of the defendant, or the fact that he had probable cause for believing that an offense was committed, and acted in good faith, will not justify or excuse the trespass."

[5] There are cases where "probable cause" will be a defense to false imprisonment when there is independent legal authority authorizing the detention—such as a shopkeeper's privilege for

528 South Eighth Street
                                                           Las Vegas, Nevada 89101
                                                           (702) 385-5454

that probable cause for so believing existed. This does not insulate Caesars from liability, and is not a defense. As noted by Prosser, the conclusion to arrest is made at the "peril" of the arresting citizen, and if there was no crime, false imprisonment occurs.

This extends equally to plaintiff's battery claim. Caesars cites a group of cases describing a police officer's privilege to handcuff in certain circumstances. Makely and Caesars are not police officers. More importantly, nonetheless, Caesars' excuse is that "a security or law enforcement officer is immune from civil liability for the torts of assault and battery if there was a legal basis for the seizure and excessive force was not employed . . .". Caesars' Brief, p. 17. Caesars did it again. Where is the authority that a private person, not a police officer, is so protected? Review of Caesars' analysis at pp. 16-17 of its brief shows that, again, it just made it up. As noted above, the authority of a citizen to arrest in Nevada is only when an actual crime was committed in their presence, or the arrestee committed a felony elsewhere, or there was actually a felony committed and the citizen has a reasonable suspicion that the subject of the arrest committed it. *Compare* Nev. Rev. Stat. §§ 171.104 and 171.126. Caesars cannot escape liability on this inapplicable argument.

Caesars also further misstates authority in its brief. Citing to *Marschall v. City of Carson*, 468 P.2d 494 (1970), Caesars seeks summary judgment on the basis that the detention must be "without any legal cause or justification." Caesars attempts to take its snippet, and extend it to a conclusion that if it can present a legal cause or justification, from its perspective, it cannot be liable. Caesars' Brief, p. 17. Caesars takes the statement from *Marschall* entirely out of context. Within a couple of sentences the court notes that the plaintiff's "innocence established a prima facie case showing no legal cause or justification for the arrest. *Id.*, at 497.

-14-

purposes of investigation or arrest on suspicion. No such privilege applies to Caesars in this

More importantly, the arrest was by police officers, and under Nev. Rev. Stat. 171.126.3, probable ["reasonable"] cause expressly authorizes the detention and gives rise to a justification defense. In contrast, the section under which plaintiff's detention allegedly occurred is Nev. Rev. Stat. 171.126.1, and there is no reasonable cause justification for a detention for a misdemeanor allegedly committed in the presence of the arresting citizen. Indeed, the contrast between the two sections highlights the fact that probable cause is no defense in a misdemeanor citizen's arrest, Caesars made the arrest at its peril, and Caesars is liable for false imprisonment and the concomitant assault and battery upon the plaintiff.

Plaintiff did not commit a trespass on Caesars' property. Under exhibit 1, and her affidavit, exhibit 2, ¶, she was invited subsequent to any prior trespass. This invitation vitiates any prior trespass warning, and remains valid until it is revoked. *See United States v. White*, 401 U.S. 745, 774 (U.S. 1971), *United States v. Souza*, 392 F.3d 1050, 1053 (9th Cir. 2004), *Cf Jordan v. State ex rel. DMV & Pub. Safety*, 110 P.3d 30, 47 (Nev. 2005)[6] (An invitation must be revoked before one can be considered a trespasser), *Bouie v. Columbia*, 378 U.S. 347, 357 (U.S. 1964) (Entry by express invitation forecloses the status of a trespass until the person is requested to leave), *Nixon v. Fulkerson*, 193 S.W. 500, 502 (Ark. 1917) ("He was there by invitation, and in no sense a trespasser."). Without a trespass, the privilege to handcuff plaintiff, and threaten physical contact, disappeared.

The handcuffing constituted a battery absent a privilege, and the threat preceding constituted an assault. *Accord Robinson v. District of Columbia*, No. 03-1455, 2006 U.S. Dist. LEXIS 68122, *24 (D.D.C. Sept. 21, 2006), *Love v. Port Clinton*, 524 N.E.2d 166, 167 (Ohio

case.
[6] Overruled on other grounds in *Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670, n.6 (Nev. 2008).

-15-
528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

1988) ("Here, the specific acts of Officer Hickman -- "subduing" and "handcuffing" -- are acts of intentional contact which, unless privileged, constitute a battery. . . . The acts of "subduing" and "handcuffing" are undoubtedly offensive to a reasonable sense of personal dignity.").  This is, minimally, for the jury to decide, and summary judgment is unwarranted.

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Caesars challenges the IIED claim on the basis that there was no "extreme or outrageous conduct."  Nevada law already provides that this predicate to a claim for IIED would be met on establishing liability for assault or battery.  As noted in *Olivero v. Lowe*, 995 P.2d 1023, 1026 (Nev. 2000), "claims for assault and battery provide the outer limits of extreme outrage." Certainly actions that are at the "outer limits" of extreme outrage suffice to meet the test for "extreme and outrageous."  The Nevada Supreme Court has already addressed the matter, as noted above, the claims for assault and battery should be submitted to the jury, and if so found, as a matter of law on a finding of liability, plaintiff meets her burden on "extreme and outrageous" conduct by Caesars.

## C. DEFAMATION

This case is governed by *K-Mart Corp. v. Washington*, 866 P.2d 274 (Nev. 1993).[7]  In *K-Mart*, the plaintiff was detained outside of a store with the storekeeper arguing that it had sufficient probable cause.  The plaintiff sued for defamation, as well as false imprisonment and other claims.  The shopkeeper had a safe haven in the shopkeeper's privilege under Nev. Rev.

---

[7] Clarified as to other issues in *Pope v. Motel 6*, 114 P.3d 277 (Nev. 2005).

528 South Eighth Street
                                                 Las Vegas, Nevada 89101
                                                      (702) 385-5454

Stat. Ann. 597.850.[8]  The jury exonerated *K-Mart* for the false imprisonment, presumably under the shopkeeper's privilege statute.  Nevertheless, *K-Mart* was found liable for defamation for the act of handcuffing plaintiff in its public place and marching him to the security office.  Caesars, likewise, did this to plaintiff.  Lodged dvd at 5:22-5:23:50.  Probable cause, under Nevada Law, does not excuse the defamation perpetrated by Caesars.

## D. NEGLIGENCE

Caesars does it again with its supporting authority.  Caesars states, "recovery for negligence in investigation and prosecuting a crime has been uniformly and specifically rejected in a myriad of state courts throughout the nation."  And directs the court to its footnote 4.  At the string cite in footnote 4, Caesars provides seven cites to cases addressing municipalities or their employees.  The remaining cite, *Montgomery Ward Co. v. Pherson*, 272 P.2d 643 (Colo. 1954) is a malicious prosecution case, and never even uses the word negligence.  As noted in virtually all authorities, probable cause is a defense to malicious prosecution, but not a defense to abuse of process.  Plaintiff never sued for malicious prosecution.  *See* Complaint.

As to the police cases, police are, to a degree, allowed to be negligent in an investigation, and the proper forum for deciding their liability, as shown through Caesars authority, is through the false arrest/malicious prosecution/civil rights causes of action.  Negligence of a private party in effectuating an arrest is, however, actionable.  *See e.g.,* *Cruz v. Henry Modell & Co.*, 2008 U.S. Dist. LEXIS 25340 (E.D.N.Y. 2008).

---

[8] Note that Caesars has no such privilege under a citizen's arrest, although they do have an analogous privilege in circumstances for suspicion of a felony on premises or suspicion of a gaming violation—issues not present in this case.  *Compare* Nev. Rev. Stat. §§ 171.126, 171.1235, 465.101.  They can also detain a person in the form of a citizen's arrest for an actual crime committed as allowed in Nev. Rev. Stat. §§ 171.104 and 171.126.

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

More importantly, Caesars again entirely relies upon the conclusion that probable cause vitiates a negligence claim. Here, because probable cause allegedly specifically vitiates any duty. What a queer statement, and it is yet again made without supporting authority. Caesars' duty is to not arrest the plaintiff or interfere with her liberty absent legal authority. As noted above, probable cause does not enter into the equation, and is only relevant should the plaintiff have actually committed the crime for which she was detained.

Here there is an abundance of evidence that Caesars' acted unreasonably. It sent invitations to persons it knew its security office had trespassed. Assuming that, as Caesars chief litigation officer states, that that was not the intent, it was certainly minimally unreasonable. There was no policy to cross reference invitations with trespasses. But the invitation obviated the trespasses. The left hand allegedly did not know what the right hand was doing, but the information systems placed persons such as plaintiff, a lawful invitee of Caesars, at risk of handcuffing and arrest. Makely refused to investigate and eschewed even talking to plaintiff's attorney who had the evidence showing him his actions were *ultra vires* under Caesar's invitations to plaintiff. Negligence abounds, a cause of action therefor is stated, and summary judgment is unwarranted.

## E. PROBABLE CAUSE

[A] corporation is charged with knowledge of all material facts of which an officer or agent acquires knowledge while acting in the course of his employment and within the scope of his authority. *United States v. United States Cartridge Co.*, 198 F.2d 456, 464 (8th Cir. Mo. 1952), Maryland Casualty Co. v. Tulsa Industrial Loan & Inv. Co., 83 F.2d 14, 16 (10th Cir. 1936). Here Caesars is the defendant, not Clint Makely. Makely arrested plaintiff in his

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

capacity as a security supervisor for Caesars, and did so within the scope of his employment. Caesars, by definition, knew that plaintiff had been invited to its establishment. Exhibit 1.

A case bringing home the importance of this perspective is *Wmi Urban Servs. v. Erwin*, 450 S.E.2d 830, 832 (Ga. App. 1994), *cert denied* 1995 Ga. LEXIS 481 (Ga. 1995). In *Wmi*, the corporate defendant was found liable for fraud. Its inspector had failed to detect termite damage in plaintiff's home, and certified the home. However, unbeknownst to the inspector, *Wmi* had historic records that disclosed prior termite damage to the home in question. The court noted that it was the corporation that was the defendant, the corporation is charged with knowledge of its books and records, and the corporation necessarily failed to disclose known relevant information. The corporation was liable.

Likewise, Caesars necessarily and definitionally recognized that plaintiff was under a current invitation at the time she was arrested for trespassing. Plaintiff, by definition, could not be trespassing. There was no probable cause for Makely, within the scope of his employment and acting for Caesars, to arrest plaintiff. To hold otherwise presents a bizarre and unworkable set of circumstances. Imagine the artist hired to paint a mural by a corporation on a building it owns. Up comes corporate security on a Saturday while the invited and commissioned artist is painting. He handcuffs and carts the artist away where the artist spends days in jail. Per Caesars, this is perfectly justified, no tort whatsoever occurred, and the artist better finish the mural on his release else he is in breach of contract. There is no such law, and the proposition is rediculous.

From the obverse perspective the converse is also true. Caesars is charged with the knowledge that its security supervisor, with the assent of its casino manager, and ultimately ratification of its Chief Litigation Officer, was in the process of seizing plaintiff, an invited

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

guest, arresting her, and eventually refusing to disavow the charges. *See Minneapolis v. First Nat'l Bank & Trust Co.*, 269 N.W. 521, 525 (Minn. 1936). This is knowledge by Caesars that it does not have probable cause to arrest or even detain plaintiff. Caesars is liable and summary judgment is unwarranted.

As to Makely individually, there are also the facts that he never checked to see if the trespass on plaintiff had been reversed. He further intentionally ignored plaintiff's attorney standing in his hallway within his view with plaintiff's invitation. Exhibit 3, pp. 67-69. Plaintiff's attorney even asked to speak with him, and was refused. Plaintiff's attorney had also informed other security personnel with Caesars as to why he wished to speak with Makely, and the substance of the invitation. Exhibit 9, ¶¶ 14-16. From the lodged dvd one could conclude that Makely was positively giddy about arresting plaintiff, and he was not about to be swayed by duty or facts. Lodged dvd at 5:35-5:43, and 5:45. There was no probable cause—just Makely's joy at being able to take down an advantage gambler.

Probable cause requires that Makely not act in a vacuum, and conduct an investigation of available facts prior to reaching his conclusion. He "may not ignore available and undisputed facts." *Baptiste v. J. C. Penney Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998). But that is just what he did. *Gilker v. Baker*, 576 F.2d 245, 247 (9th Cir. Cal. 1978), "A determination of probable cause involves the weighing of many factors. When, as here, reasonable persons might reach different conclusions about the facts, the establishment of those facts is for the jury, and the existence of probable cause is likewise for the jury, upon a proper instruction about the law.

/ / /

/ / /

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

# F.  ABUSE OF PROCESS

Caesars complains that plaintiff cannot establish abuse of process because there is no process.  This is simply wrong.  Exhibit 5 is process, and  instituted by Makely.  The SILA program also allows for process to be instituted by Makely.  *See* Discussion, p. 6, *supra*.

As to ulterior purpose, learned treatises center and establish that casinos will go to great lengths to circumvent legal advantage gamblers.  *See* ADVANTAGE PLAY FOR THE CASINO EXECUTIVE, Bill Zender (Zender, 2006), BLACKJACK AND THE LAW, Prof. I. Nelson Rose and Robert A. Loeb, Esq. (RGE Press, 1998).  There is also evidence that Caesars would go out of its way to inconvenience or even punish plaintiff.  For example, they once threw her out in the middle of a meal in circumstances wholly unrelated to gambling or placing the casino at risk.  Exhibit 10.Here there is the evidence that Caesars actually arrested an invited guest.  This, too, is evidence of an ulterior purpose.  Further, what is to be gained from the criminal prosecution of the plaintiff?  Nothing.  On the evidence the jury is free to conclude that Caesars sought to punish plaintiff for doing nothing more than playing with her mind, and sought to do so because she was a winner.

## III. CONCLUSION

For the foregoing reasons, plaintiff requests that Caesars' motion for summary judgment be denied in all respects.

Dated this 8th day of March, 2009.

NERSESIAN & SANKIEWICZ


_____/S/_____
Robert A. Nersesian, Esq.
Nevada Bar No. 2762
528 South 8TH Street, Suite A
Las Vegas, Nevada 89101
Attorneys for Plaintiff

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454

## CERTIFICATE OF SERVICE

On this 8th day of March, 2009, the undersigned did serve a copy of the foregoing brief in opposition to Caesars Palace's motion for summary judgment upon defendants' attorneys through the CMECF system maintained by this court.

_____/S/_____
Robert A. Nersesian

528 South Eighth Street
Las Vegas, Nevada 89101
(702) 385-5454